TRUCK TERMINALS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66330. Filed February 12, 1960.

---

*Theodore W. Russell, Esq.*, for the petitioner.
*E. A. Tonjes, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* The first issue here presented is whether for purposes of the disallowance, under sections 15(c) of the 1939 Code,[1]

---

[1] SEC. 15. SURTAX ON CORPORATIONS.

(c) DISALLOWANCE OF SURTAX EXEMPTION AND MINIMUM EXCESS PROFITS CREDIT.— If any corporation transfers, on or after January 1, 1951, all or part of its property (other than money) to another corporation which was created for the purpose of acquiring such property or which was not actively engaged in business at the time of such acquisition, and if after such transfer the transferor corporation or its stockholders, or both, are in control of such transferee corporation during any part of the taxable year of such transferee corporation, then such transferee corporation shall not for such taxable year (except as may be otherwise determined under section 129(b)) be allowed either the $25,000 exemption from surtax provided in subsection (b) or the $25,000 minimum excess profits credit provided in the last sentence of section 431, unless such transferee corporation shall establish by the clear preponderance of the evidence that the securing of such exemption or credit was not a major purpose of such transfer. * * *

and 1551 of the 1954 Code,[2] of the surtax exemption allowed by sections 15(b) of the 1939 Code,[3] and 11(c) of the 1954 Code,[4] and of the minimum excess profits tax credit allowed by section 431 of the 1939 Code,[5] the obtaining of such exemption and credit was a major purpose of the activation of petitioner and the transfer of motor vehicular equipment from Fleetlines to petitioner. The respondent has determined that securing the exemption and credit was such a major purpose; the petitioner contends that it was not.

Whether securing the exemption and credit, resultantly avoiding taxation in that manner, was a major purpose of the activation of petitioner is a question of fact, and not a question of law. *Sno-Frost, Inc.*, 31 T.C. 1058, 1062. The determination is to be made upon a consideration of all circumstances relevant to the transaction, Regulations 111, section 29.15–2(e). Obtaining the surtax exemption and excess profits tax credit need not be the sole or principal purpose of the activation; that it was a major purpose will suffice to support the disallowance. *Contract Battery Mfg. Co.* v. *Tomlinson*, (S.D. Fla. 1958) 2 A.F.T.R. 2d 5413, 58–2 U.S.T.C. par. 9655. Regs. 111, sec. 29.15–2(e). The burden of proving by the clear preponderance of the evidence that securing the exemption and credit was not a major purpose of the activation is placed upon the petitioner by the statutory enactments here involved.

That the taxpayer proves business needs which motivated the transaction does not alone establish that securing the exemption and credit was not a major purpose. *Central Valley Management Corp.* v. *United States*, 165 F. Supp. 243. Regs. 111, sec. 29.15–2(e). Proof of business needs, however, which could only be met by the activation and transfer tends to establish that tax avoidance was not a major purpose. *Sno-Frost, Inc.*, *supra*.

The term "major" is not defined in the statute. It is a word of common usage and synonymous with many other words of like connotation and sense. *Contract Battery Mfg. Co.* v. *Tomlinson*, *supra*. A review of cases interpreting the word, while not entirely rewarding, indicates that the major quality of a thing is to be determined

[2] So far as is pertinent here, the cited provision of the Internal Revenue Code of 1954 is, in effect, the same as the cited corresponding section of the 1939 Code, set forth marginally, *supra*.

[3] (b) IMPOSITION OF TAX.—There shall be levied, collected, and paid for each taxable year upon the corporation surtax net income of every corporation (except a corporation subject to a tax imposed by section 231(a), Supplement G, or Supplement Q) a surtax of 22 per centum of the amount of the corporation surtax net income in excess of $25,000.

[4] See note 2, *supra*.

[5] SEC. 431. DEFINITION OF ADJUSTED EXCESS PROFITS NET INCOME.

The term "adjusted excess profits net income" in the case of any taxable year means the excess profits net income (as defined in section 433(a)) minus the sum of:

    (1) EXCESS PROFITS CREDIT.— * * *

    (2) UNUSED EXCESS PROFITS CREDITS.— * * *

If such sum is less than $25,000, it shall be increased to $25,000.

in large part by its effect. *Gale Realty Corporation* v. *Bowles*, 139 F. 2d 496; *D'Amico* v. *Brock*, 264 P. 2d 120. We conclude that the major quality of a "purpose" within the framework of the statutory sections here involved is to be determined in the light of the effect which consideration of securing the exemption and credit had upon producing the decision to create or activate the new corporation. Such an approach is consistent with legislative intent as determined from the history of the enactment.[6]

Applying all of these considerations to the record here presented, we have concluded that securing the exemption and excess profits credit was not a major purpose in the activation of petitioner and transfer of certain assets of Fleetlines, Inc., to it. We decide this first issue in favor of petitioner.

The second issue remaining for decision is whether, as respondent has determined, the cost basis for purposes of computation of depreciation and long-term capital gain to petitioner of 78 pieces of motor vehicular equipment is the adjusted basis to Fleetlines, or, as petitioner contends, the price paid to Fleetlines by petitioner upon acquisition of the equipment. Respondent's determination of deficiencies in petitioner's taxes for the periods here in question is, in large part, predicated upon his determination that the transfer of equipment is within the provisions of section 112(b)(5) of the 1939 Code,[7] and, therefore, that section 113(a)(8)[8] is operative.

Respondent's determination is premised on his conclusion that the net effect of the transactions between Fleetlines and petitioner during

---

[6] As originally introduced, section 15(c) would have limited to $25,000 the surtax exemption for all corporate members of a controlled group, apportioning the exemption among the members, H.R. 4473, 82d Cong., 1st Sess., sec. 123(a). This was rejected by the Senate Committee on Finance as so broad an attack upon the tax avoidance problem that it failed to recognize the legitimate business purposes motivating the organization of many separate corporations. S. Rept. No. 781, 82d Cong., 1st Sess., sec. VI C 1, pp. 67–69. As enacted, section 15(c) was a compromise product of a conference committee. H. Rept. No. 1213, 82d Cong., 1st Sess., pp. 6–9, 67–68.

[7] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \* \*

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; \* \* \*

[8] SEC 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(8) PROPERTY ACQUIRED BY ISSUANCE OF STOCK OR AS PAID-IN SURPLUS.—If the property was acquired after December 31, 1920, by a corporation—

(A) by the issuance of its stock or securities in connection with a transaction described in section 112 (b)(5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), \* \* \*

\* \* \* \* \* \* \*

then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

April 1952 and in April 1953 was that Fleetlines transferred 78 pieces of motor vehicular equipment and $5,000 in cash to petitioner solely in exchange for 2,000 shares of petitioner's stock, petitioner's only outstanding shares. In so determining, respondent has accorded no validity as such to the agreement of April 1, 1952, between petitioner and Fleetlines for the purchase and sale of the motor vehicular equipment, and has treated as a single transaction all of the dealings between Fleetlines and petitioner which began with the transfer of the equipment in April 1952, and ended with the issuance of 1,950 shares of petitioner's stock to Fleetlines in April 1953, under the circumstances detailed in our Findings of Fact.

Petitioner's contention is that by a sales agreement with Fleetlines on April 1, 1952, it purchased the vehicles then owned by Fleetlines for $221,150, payable $5,150 on May 1, 1952, and the balance in monthly installments of $6,000 each and that an April 28, 1952, Fleetlines purchased 50 shares of petitioner's stock for $5,000 and that in April 1953, it purchased 1,950 more shares of petitioner's stock by canceling out an indebtedness which had accumulated at that time against petitioner of $195,000. Petitioner further contends that each of these transactions was a separate one and should be given its normal separate effect and should not be grouped together as one transaction as respondent has determined and still contends.

Whether a transfer of property by a stockholder to a corporation constitutes, for purposes of Federal taxation, a sale or a contribution of capital is a question of fact. *Cohen* v. *Commissioner*, 148 F. 2d 336 (C.A. 2, 1945). It is dependent upon the intent of the parties as ascertained from all relevant facts and circumstances. *Sarkes Tarzian, Inc.* v. *United States*, 240 F. 2d 467, 470 (C.A. 7, 1957). No rule of thumb applies, no single criterion determines the result, for each case must be adjudicated upon its own facts. *Gooding Amusement Co.* v. *Commissioner*, 236 F. 2d 159, 165 (C.A. 6, 1956), affirming 23 T.C. 408, certiorari denied 352 U.S. 1031.

Petitioner claims that at a time when it had no capital, no enforcible stock subscription, no assets, and a debt of $100, it entered into a bona fide purchase and sale of motor vehicular equipment owned by its parent company of a value of $221,150, taking immediate possession and beneficial ownership, and title 1 month later upon the payment of 2.33 per cent of the total price. Petitioner has shown numerous reasons for making the transfer, but no valid business reasons independent of tax considerations for the choice of a sale as the method of transfer. Twenty-seven days after the sale, petitioner issued stock to its parent company and received $5,000, its sole form capital for the succeeding 12 months. Petitioner claims this sum constituted working capital adequate to its then expected needs of paying $53,150 on the purchase of the equipment during

1952, maintenance of the equipment at an actual cost of approximately $150,000, and the purchase of additional equipment. Petitioner made the initial payment to its parent 28 days after the time specified in the agreement. Subsequently, monthly payments were made from 5 to 24 days after the first of each month. In September and October 1952, petitioner paid the parent $51,000 more than the amounts specified in the agreement. In December 1952, the parent advanced $160,000 on an open account with no interest and no specified dates of repayment; and petitioner paid $129,000 as the balance remaining under the agreement of sale. The parent subsequently made further advances of $35,000; and in April 1953, petitioner issued additional stock in the amount of $195,000. It received Fleetlines' check for this amount and it, in turn, issued to Fleetlines its check in the same amount in payment of advances appearing against it on open account on Fleetlines' books. Petitioner does not claim that the parent preserved any lien upon the equipment transferred; rather, it introduced evidence that the parent intended that the equipment be used by petitioner as collateral in securing loans from independent lenders.

From the record presented we do not conclude that the transaction constituted a bona fide sale; we conclude, rather, that it represented a contribution of capital with the form but not the substance of a sale, giving rise to no true debtor-creditor relationship. We do not find that the agreement was such as would have been negotiated by two independent and uncontrolled parties. We do find that the transfer, regardless of its form, was intended to be a capital contribution by which the assets transferred were placed at the risk of petitioner's business.

Since we have found that the transaction was not a bona fide sale of the equipment, we must look to see if the assets were transferred in exchange for stock or securities of petitioner. If the transfer is regarded as completed on April 1, 1952, the equipment was exchanged for a promise of petitioner to pay its parent $221,150. The promise was in direct proportion to the parent's proprietary interest, not actually paid according to its terms, subsequently converted to a promise to pay without provision for interest upon default or specified repayment dates, and ultimately converted into stock in petitioner. We conclude and hold, therefore, that the promise constituted in substance a proprietary interest in petitioner in the nature of stock rather than a bona fide indebtedness. Cf. *R. M. Gunn*, 25 T.C. 424, affirmed per curiam 244 F. 2d 408. Finding that petitioner's promise to pay evidenced a proprietary interest, it makes no difference whether the transfer be viewed as completed in April, May, or December 1952, or in April 1953. We hold, therefore, that the transfer

whereby petitioner received the motor vehicular equipment was within the provisions of section 112 (b) (5) of the 1939 Code.

Petitioner contends, however, that because Fleetlines treated the transfer as taxable, reported and paid tax upon a gain representing the difference between the depreciated and the market value of the equipment, gain was recognized thereby and petitioner is entitled to a basis increased in that amount. Such an issue was raised and decided adversely to the taxpayer's contentions in *Gooding Amusement Co.* v. *Commissioner*, *supra*, which case is dispositive of the issue herein. Respondent's determination of petitioner's cost basis for computation of depreciation and long-term gain upon the sale of the equipment is sustained.

*Decision will be entered under Rule 50.*