John V. ROWAN et al., Appellants,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15167.**

United States Court of Appeals,
Fifth Circuit.

Jan. 28, 1955.

Muckleroy McDonnold, San Antonio,
Tex., for appellant.

C. Guy Tadlock, Sp. Asst. to Atty.
Gen., Ellis N. Slack, Sp. Asst. Atty.
Gen., H. Brian Holland, Asst. Atty.
Gen., John J. Kelley, Jr., Sp. Asst. to
Atty. Gen., Washington, D. C., Charles
E. Herring, U. S. Atty., Bradford F.
Miller, Asst. U. S. Atty., San Antonio,
Tex., for appellee.

Before BORAH and TUTTLE, Circuit
Judges, and DAWKINS, District Judge.

TUTTLE, Circuit Judge.

This is an appeal by Rowan and wife
and Hope and wife against the United
States in four separate suits which were
consolidated for trial and on this appeal.
They were suits for refund of taxes
brought under Title 28 U.S.C.A. § 1346
(a) (1). Each claim was for less than
$10,000 and the trial court had juris-
diction.

The sole question before the Court
for decision is whether the Comission-
er of Internal Revenue has the power
and right to treat advances made by
plaintiffs to their wholly owned cor-
poration for operating purposes as con-
tributions to capital, in order to deny
to the taxpayers the right to deduct
their losses on liquidation as short term
capital losses.

This case might well have been disposed of by the trial court on plaintiffs' motion for summary judgment. We think this not such a case as would require the court to proceed to trial on the facts because they were difficult or complicated or because the legal question required further factual basis.[1]

Plaintiffs alleged that during the month of December, 1947, each couple of husband and wife suffered a net loss of $50,944.28 upon the dissolution of Rowan & Hope, Inc., $48,651.79 of which was attributable to stock owned less than six months, and $2,292.49 to stock held over six months. Plaintiffs alleged that each husband and wife deducted one-half each of $48,651.79 from his or her net capital gains, which were in excess of the net capital losses, but that the Commissioner of Internal Revenue treated the losses as long term capital losses and assessed additional taxes against plaintiffs. They paid, filed timely claims for refund and sued after six months without action by the Commissioner.

The United States by answer admitted that plaintiffs claimed the losses but denied that they were properly attributable to stock owned less than six months.

Plaintiffs filed motions for summary judgments, accompanied by affidavits which showed that on December 12, 1947 each couple purchased 955 shares of the capital stock of Rowan & Hope, Inc., paying $95,500 in cash therefor, and stating that each couple had purchased 45 shares for $4,500 cash many years previously. That on December 27, 1947 Rowan & Hope, Inc. was dissolved and each couple received a liquidating dividend of $49,055.72, suffering a loss of $50,944.28; that plaintiffs filed their income tax returns claiming their losses as stated above.

The United States filed its reply to the motions for summary judgment, stating that "there is a material issue of fact" and attached an affidavit of Revenue Agent Victor L. Manning and prayed that the motion be denied. Bearing in mind that under the proceedings for summary judgment the defendant is required to controvert any statements made by the motion, pleadings or affidavits filed in support, it is appropriate to state here that if the facts alleged in the affidavits by plaintiffs as to the acquisition of the stock and the loss on dissolution were not controverted then plaintiffs would be entitled to a judgment since these assertions would justify the treatment of the loss as a short term capital loss, as contended by the plaintiffs.

Since the failure of the Government to raise a substantial issue of fact justifying a contrary result is the basis of our decision here, the material part of the Manning affidavit is printed in the margin.[2]

1. Cf. Kennedy v. Silas Mason Co., 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347. But see 6 Moore's Federal Practice 2158.
2. "In the course of my investigation I found the following:
   "Taxpayer (husband) is a member of the partnership of Rowan & Hope and also owned 50% of the capital stock of Rowan and Hope, Inc., his partner owning the other 50%. The corporation was organized in 1930 for the purpose of drilling oil wells for Rowan & Hope and others. The corporation operated at substantial losses for all years except four small profit years. Working capital was provided to the corporation by advances by the partnership of Rowan & Hope. The corporation was insolvent in 1941 with a deficit of $55,000. The partnership of Rowan & Hope advanced $90,000 to the corporation in 1941. At the end of 1941 the corporation owed the partnership approximately $125,000. The corporation continued to owe that amount to the partnership from 1941 until the corporation was liquidated on December 27, 1947.
   "On the advice of counsel, an increase of the capital stock of Rowan & Hope, Inc., was authorized on December 7, 1947. The capital was increased from 90 shares of a par value of $100 to 2,000 shares of a par value of $100. The partners shared the cost of this stock equally, namely $95,500 each, making altogether $191,000 which when added to the original capital stock of $9,000 made up the new capital stock of $200,000.
   "On December 27, 1947, the corporation was liquidated, resulting in the payment

Both the Government and the taxpayers argue that the real question here is whether the advances made by the taxpayers to the corporation were loans, as contended by the taxpayers, or part of the corporation's capital as claimed by the Commissioner of Internal Revenue; if they were loans and if they became worthless as non-business bad debts in 1947, they would be treated for tax purposes as short term capital losses under Section 23(k) (4) of the Internal Revenue Code,[3] and the action taken shortly prior to dissolution, which the Commissioner says was a void and meaningless transaction, would be entirely unimportant. For in that aspect of the affair, the loss would be available to plaintiffs as a short term capital loss whether the new purchase of capital stock was recognized for tax purposes or not. This appears to be conceded by both parties.

Now, what does the Government's affidavit have to say with respect to this basic question? It says the plaintiffs were sole owners of the corporation; that it was organized in 1930 with $9,000 capital stock for the purposes of drilling oil wells for plaintiffs and others; it operated at substantial losses for all but four years; that *working* capital (not, it will be noted, purchase of capital assets) was provided by *advances* by the partnership, Rowan & Hope; these advances were substantial beginning in 1941, at the end of which year they equalled approximately $125,000; and "the corporation continued to *owe* that amount to the partnership until the corporation was liquidated on December 27, 1947." That approximately 20 days before liquidation an additional 1910 shares of capital stock were duly authorized by the corporation and these shares were purchased and paid for by the taxpayers, thus making outstanding, fully paid, capital stock of $200,000; that on December 27, 1947, the corporation was liquidated resulting in the "payment of the *debts due the partnership* out of the capital."

The affidavit then draws the conclusion that the stock issued on December 12th was not issued for a business purpose but was issued to connect (sic, probably intended to be "convert") plaintiffs' long term capital loss into a short term loss in order to evade taxation.

Construing this affidavit and all of its factual statements most strongly against petitioners, it is nevertheless apparent that it does not present any issue of fact that would warrant the Court in submitting to a jury, or to decide itself in the absence of a jury, any substantive question that could affect the legal determination as to the rights of the parties.

By reference to appellee's brief, and only by such reference, does it become apparent what is meant by Manning's

---

of the debts due the partnership out of the capital secured from the issuance of the new stock. The loss on liquidation to the stockholders was $100,727.05.

"The capital stock issued on December 7, 1947, was not issued for a business purpose but was issued to connect plaintiffs' long-term capital loss into a short-term loss in order to evade taxation. Because of this, plaintiffs' claim for refund was denied."

3. 26 U.S.C.A. § 23(k) (1) and (4):
"§ 23. Deductions from gross income.
"In computing net income there shall be allowed as deductions:
*       *       *       *       *
"(k) [as amended by Section 124(a) of the Revenue Act of 1942] Bad debts.
"(1) General rule. Debts which become worthless within the taxable year;

*  *  * This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection.
*       *       *       *       *
"(4) Non-business debts. In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term 'non-business debt' means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

reference to "tax evasion," which are the magic words by which the Government sought to present an issue of fact. The Government's case is bottomed on the simple but unacceptable proposition that from the bare fact that the sole stockholders of a corporation *advanced* funds for its operations until for the last 16 years it owed them approximately $125,-000 until this *debt* was paid off in liquidation, it can be inferred that the amount advanced was capital instead of a loan.

Recognizing fully that the Government is not bound in its tax collecting activities by the terminology used by taxpayers if such terminology is actually used to disguise something quite different,[4] we nevertheless have seen no authority for the proposition that the stockholders of a corporation may not determine just how much of their funds they care to risk in the form of capital and how much, if any, they are willing to lend as a credit. If they make such a determination and it is clear that such is their intent, the fact that when they close up the venture and take their loss as to such amount as they have actually loaned the corporation, this leaves them in a position to enjoy more favorable deduction privileges than if they had put it all in as capital, this does not entitle the Commissioner of Internal Revenue to rewrite their balance sheet for them and show to be capital what was intended to be a loan.

But, it is said that whether an advance is a loan or is capital depends on the intent of the parties, and this intent is to be ascertained from all relevant facts and circumstances. In stating this proposition, the brief for the United States cites two cases decided by this Court, Arnold v. Phillips, 5 Cir., 117 F.2d 497 and United States v. South Georgia Ry. Co., 5 Cir., 107 F.2d 3. This is undoubtedly the law, but we find no statement of fact contained in the Government's response to the motion for summary judgment that can raise the slightest inference that the advances were not exactly what the affidavit of the Government's affiant Manning said they were—"debts due the partnership." Not only does he call the advances "debts" but twice he refers to the money advanced as money "owed the partnership." The Arnold case deals with the power of the Bankruptcy Court to scrutinize carefully loans made by a sole stockholder to his corporation for the purchase of *capital assets* and secured by a mortgage on the greater part of the physical properties when bankruptcy supervenes and *creditors* attack the validity of the transaction. In the South Georgia Railway case the advances which were the subject of dispute between the taxpayer and the Government were made in return for stock certificates and they were treated by the parties as stock. Neither of these cases does more than stand as authority for the proposition that the acts of the parties can be given maximum consideration in ascertaining their true intent. Here, as the case stood for the court's consideration on motion for summary judgment no fact is before the court that deals with the advances except that contained in Manning's affidavit and there the advances are denominated by him as money "owed" to the partnership and as "debts." No fact is stated to raise any contrary inference.

Having overruled the plaintiffs' motion for summary judgment, as it had the right to do under the rules even though a contrary decision would have been correct, the trial court proceeded to hear the case without a jury. No further facts were developed on behalf of the Government in the oral testimony that would permit the drawing of the inference by the trial court that the advances made by the partners to the corporation were not at all times intended to be a loan of money which was to be repaid. In fact the only light thrown on the transaction by the evidence was favorable to the taxpayers' contention.

4. Gregory v. Helvering, 293 U.S. 465, 55 S. Ct. 266, 79 L.Ed. 596.

It was testified that the advances were at all times carried on the books of the corporation as a credit in favor of the taxpayers; that at one time, on January 1, 1940, ten years after the company was organized, the partnership was actually indebted to the corporation in the sum of $31,354.19 and that for two years, 1944 and 1945, the corporation made a net profit in its operations; that it was contemplated at all times that the money would be paid back; and lastly that the indebtedness to the partners varied from month to month by the entering of debits and credits during each year's operations, and that the final balance owing to the partners was substantially less than the $125,000 mentioned in Mr. Manning's affidavit. No significance can be attached to the fact that the taxpayers held no promissory note for it was testified to that this was an open running account, with the balance changing frequently each year. As is stated above, at one time the balance was in favor of the corporation.

Many students of tax law have discussed the inadequately capitalized corporation, sometimes popularly known as the "thin corporation." The court, of course, recognizes the fact that stockholders who lend money to their own corporation obtain all the advantages of favorable tax treatment if the enterprise fails. But the court also recognizes that, entirely without reference to the incidence of taxes stockholders of corporations have always been free to commit to corporate operations such capital as they choose and to lend such additional amounts as they may elect to assist in the operation if that is their true intent, always thus reserving the right to share with other creditors a distribution of assets if the enterprise fails. It would obviously work an unwarranted interference by the courts in ordinary and perfectly proper business procedures for us to say that there can be established, as a matter of hindsight, a ratio

of stockholder owned debt to the capital of the debtor corporation. No stockholder could safely advance money to strengthen the faltering steps of his corporation (which, of course, may be greatly to the benefit of other creditors) if he is faced with the danger of having the Commissioner, with the backing of the courts, say, "he had no right to launch a corporate business without investing in it all the money it needed, and investing it in the way that is most disadvantageous to himself, both as relates to taxation and as to other creditors."

It is entirely within the competence of Congress to provide by statute for such ratio if it deems it advisable or necessary within the scheme of Federal taxation. It is not within our province to do so. Nor would it further the desirable end of certainty in taxes for us to do so.

In what we have said we refer only to the situation where there is no evidence of an intent to make a contribution to capital other than the ratio between debt and stated capital. There are in this case none of the facts authorizing other inferences to be drawn, such as that the initial payments, both capital and advances, were all made for acquisition of capital assets, as in Commissioner of Internal Revenue v. Meridian & Thirteenth Realty Co., 7 Cir., 132 F.2d 182, and Matthiessen v. Commissioner, 2 Cir., 194 F.2d 659; or the issuance of certificates of stock, such as Meridian & Thirteenth Realty Co.,[5] supra; or subordination to other indebtedness; or inordinately postponed due date; or agreement not to enforce collection; or provision for payment of "interest" only out of earnings; or payment of advances as initial funds to start the corporate life, as in Janeway v. Commissioner, 2 Cir., 147 F.2d 602; one of which or a combination of which is present in the usual case of this type that comes before the appellate courts for consideration.

5. Of course, even the fact that the advance is for acquisition of capital assets is not conclusive on the point. Wilshire &

Western Sandwiches, Inc. v. Commissioner, 9 Cir., 175 F.2d 718.

We consider from a reading of the Government's brief that it is conceded that if the advances during the years 1941–1947 were loans and they retained that status as debts owed to the partnership, then if all or a part of these debts became worthless in December, 1947, they were non-business debts which became worthless within the taxable year within the meaning of Section 23(k) (4). This means that if the corporation had been liquidated on December 7th[6] without the corporation having issued the new capital, which was partially used to pay off the debt, with the resulting loss on liquidation, twenty days later, identically the same loss would have been suffered by the taxpayers, with the same tax effect as they sought to accomplish by the method they chose. The Government's attack on the procedures after December 7th is based on the theory that the capital stock transaction was void because it was done solely for the purpose of changing a long-term capital loss (which is the term given by it to the loss resulting from the debt's becoming worthless) into a short term capital loss on the surrender of their stock. This attack fails because the major premise fails, i. e. that the debt to the partnership is capital rather than a debt. If the corporation, having an indebtedness which it owes and cannot pay in full, obtains additional cash for stock from its creditors and then pays the debt in full, but leaves the stock in the hands of the stockholders worth less by the amount of such payment on liquidation, there is no sham and there is no tax evasion because no benefit results from this procedure. The tax benefit which the Commissioner seeks to deny to petitioners is that to which they are entitled by the becoming worthless of the debts owed them by the corporation in the tax year 1947.

■ There being no evidentiary fact shown on the trial that tends to prove the advances were anything other than debts, the trial court could only find that this is what they were. His finding that "the advances by the partnership to the corporation were contributions to the capital of that corporation rather than loans" is without evidence to support it, and is clearly erroneous.

■ As to whether the debts became worthless within the taxable year, the Government's brief undertakes to claim that they became worthless long before December 7, 1947. The only basis for this argument is that the corporation was insolvent in 1941, with a deficit of $55,000, and that, having advanced $90,-000 in that year the taxpayers were owed $125,000 at the end of that year. Obviously the fact of insolvency proves nothing more than that the corporation could not then pay all of its debts. For a debt to become worthless within the meaning of Section 23(k) (4), it must become totally worthless. The fact that this did not happen is best indicated by the fact that six years later the loss as actually written off was some $25,000 less than the $125,000 indebtedness due by the corporation to the partnership in 1941. The trial court made no finding of fact on this. We hold that the debt became worthless in 1947.

If the final refinancing or recapitalization were void and of no effect, as the Government contends, then we would have to consider the liquidation as having taken place as of December 7th. In that case the taxpayers would be deemed to have suffered a loss from the becoming worthless of a non-business debt of $100,727.05. If the refinancing is to be given effect, as we hold it must be, because no valid attack has been made on it, then, the corporation having paid off the debt, the taxpayers took a loss of $100,727.05 on the stock, of which $98,-000 was held by them for a period of less than six months. In either event they would be entitled to treat the deduction as a short term capital loss.

The judgment must therefore be reversed.

Reversed and remanded.

---

6. There is some conflict in the record as to whether the correct date is December 7th or December 12th, but this is immaterial.