**SARKES TARZIAN Inc.,**
Plaintiff-Appellee,
v.
**UNITED STATES of America,**
Defendant-Appellant.
No. 11876.

United States Court of Appeals
Seventh Circuit.
Feb. 7, 1957.

Jack C. Brown, U. S. Atty., Indianapolis, Ind., Charles K. Rice, Asst. Atty. Gen., Walter R. Gelles, Lee A. Jackson, Harry Baum, Attys., Tax Division, U. S. Department of Justice, Washington, D. C., for appellant.

C. B. Dutton, Wesley A. Dierberger, Indianapolis, Ind., Merle H. Miller, Indianapolis, Ind., Dutton & Kappes, Indianapolis 4, Indiana, Ross, McCord, Ice & Miller, Indianapolis, Ind., of counsel, for appellee.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This was an action by plaintiff-taxpayer to recover allegedly erroneously as-

sessed income tax. The question on this appeal is whether the District Court properly granted plaintiff's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

This cause arose out of the government's disallowance of depreciation deductions to plaintiff on certain patent rights acquired by it from its sole stockholders. The pleadings, interrogatories and answers thereto on file, together with the affidavits of both parties, reveal the following pertinent facts: Prior to the organization of plaintiff on September 1, 1949, Sarkes and Mary Tarzian, husband and wife, were partners in a consulting engineering business. Sarkes Tarzian owned a two-thirds interest and Mary, a one-third interest. Part of their work was concerned with the development of an automatic tuning mechanism for television receiving sets, and two patent applications were filed in connection with a tuner. The partnership began to manufacture tuners in quantity, and when it became apparent that most television manufacturers preferred to buy tuners rather than manufacture them, the partners shifted their primary business from consulting engineering to manufacturing, and by 1948 the manufacture of tuners had become a substantial business with the Tarzians. This development required large inventories and a change in accounting technique from cash to the accrual method for income tax purposes. In the year 1949 the Tarzians faced large tax payments, but most of their liquid assets were invested in the partnership and there was a felt need for funds to meet these tax obligations. The tuner manufacturing business continued to increase, and it is claimed that in order to obtain bank credit for business expansion it was necessary to isolate the profitable tuner business from other partnership activities, which in 1949 were not showing a profit and were considered financially hazardous; and, accordingly, the plaintiff was organized to take over the tuner business.

On September 1, 1949, plaintiff-taxpayer was duly organized and qualified to do business in the State of Indiana. Sarkes and Mary Tarzian became the sole stockholders, and president and secretary-treasurer, respectively. At the first corporate meeting on September 1, 1949, the board of directors approved five written contracts to be entered into between plaintiff and the stockholder-partners for the purpose of transferring the tuner business from the partnership to the corporation. Each of the authorized contracts was executed on the same date.

By the terms of the first contract the physical plant, work in process, machinery and backlog of orders for the tuners were transferred to plaintiff in exchange for such number of common shares of plaintiff as to give each share a value of $20.00 based upon the book value of the net assets of plaintiff on September 1, 1949. Accordingly, of the 10,000 authorized but as yet unissued common shares, 1,593 were issued to Sarkes and Mary Tarzian in the ratio of two to one, respectively—the same proportion as the partnership interests held by each. Excluded from the transfer under the terms of the first contract were cash on hand, real estate and interests in real estate, motor driven vehicles, patents, patent applications and inventions covered thereby, inventory of raw materials except work in process, accounts and loans receivable, corporate stocks and bonds, good will and business records.

By the terms of the second contract, the plaintiff acquired all right, title and interest in the two applications for letters patent and all rights incidental thereto. The purchase price was payable over a period of twenty years on the basis of 2½ per cent of the sales price or 30 cents for each tuner sold by plaintiff, whichever sum was greater. In addition, the Tarzians were to receive 2 per cent of the selling price of any licensee of plaintiff or 10 cents for each tuner sold, whichever sum was greater.

By the terms of the third contract the stockholders loaned plaintiff $60,000 se-

cured by promissory notes payable on demand with interest at the rate of six per cent after maturity. By the terms of the fourth contract they leased certain real estate to plaintiff for a term of five years, and by the fifth, they sold the partnership inventory to plaintiff.

On February 14, 1950, a patent was issued on one of the patent applications, and all tuners manufactured were covered by this patent.

Plaintiff took over production of the tuners on September 1, 1949, and in the ten-month period ending June 30, 1950, had a net income in excess of $2,000,000. During this period plaintiff repaid the loan of $60,000 in full and paid the purchase price for the inventory in the amount of $96,722.97.

The terms of the patent sales contract were not complied with. According to the contract, amounts payable were to be computed quarterly and paid within sixty days of each quarterly period. The payments for the first three periods were not timely, the amounts being accrued and ultimately paid on September 13, 1950. The payments for the next two periods were also tardy and were not made until June 22, 1951. Plaintiff deducted the entire amount of $156,819.96 paid on September 13, 1950, on its tax return for the period ended June 30, 1950, as depreciation of the patent applications. The Commissioner informed plaintiff that of this amount $49,047.10 would be allowed as amortization of the patent and the remainder was disallowed. Plaintiff paid the deficiency and filed a claim for refund. Thereupon, the Commissioner disallowed the $49,047.10 previously allowed as amortization of the patent, and the resulting deficiency was paid by plaintiff.

The original contract of September 1, 1949, for the sale of the patent applications was revised on January 15, 1951, to provide that plaintiff could discharge its contract obligation upon payment of $750,000 in addition to the amounts already paid or accrued to December 31, 1950—$275,085.92. The sum of $10,000 payable on or before March 15, 1951, was paid. The sum of $140,000 payable by January 1, 1952, has never been paid. In lieu thereof a note in the amount of $140,000 was issued to the Tarzians. This note was subordinated in right to any and all indebtedness existing or which may exist for any monies borrowed from the Harris Trust and Savings Bank and any and all banks that may participate with the aforesaid bank in lending monies to plaintiff. The Tarzians also agreed to subordinate their rights to all future payments of the patent purchase price under the revised contract to the claims of the Harris Trust and Savings Bank. The remaining $600,000 was payable in four equal annual installments of $150,000 beginning January 1, 1953. When this action was commenced the note was still unsatisfied and no payments had been made on the $600,000 balance.

Plaintiff has not from the date of incorporation to the present time distributed any dividends. And the debt-capital ratio of plaintiff on September 1, 1949, indicates that it was inadequately capitalized.

It is the government's position that the patent applications were transferred to plaintiff solely in exchange for its stock or as a contribution to capital, so that the basis to plaintiff for depreciation was zero—the transferors' basis. Plaintiff contends that the tranfer was a bona fide sale, entitling it to a basis for tax purposes equal to its purchase price.

Plaintiff filed a motion for summary judgment and filed therewith, in support, the affidavits of Sarkes Tarzian, Robert L. Floyd, a certified public accountant who prepared plaintiff's income tax returns, and Charles F. Clapham, the controller and assistant treasurer of plaintiff. In opposition to the motion the government filed three affidavits of its trial attorney, and interrogatories propounded to plaintiff and the answers thereto executed by plaintiff's attorneys. In its affidavits the government asked to be excused under Rule 56(f), Federal Rules of Civil Procedure, 28 U.S.C.A., from filing counteraffidavits and stressed that

an issue of credibility was presented requiring the court to observe the demeanor of plaintiff's witnesses on cross-examination. The District Court denied the request, and disregarded such affidavits as the government did produce on the grounds that they were not made on personal knowledge, did not set forth such facts as would be admissible in evidence, and did not show affirmatively that the affiant was competent to testify to the matters stated therein. The District Court held that there was no genuine issue as to any material fact and that plaintiff-movant was entitled to judgment as a matter of law. Sarkes Tarzian, Inc., v. United States, D.C.S.D.Ind., 140 F.Supp. 863.

■■ The government concedes that the evidentiary facts here are not in dispute so the only question is whether the plaintiff was entitled to a summary judgment under Rule 56 of the Federal Rules of Civil Procedure. We think the District Court did not consider what inferences might reasonably be drawn from the undisputed evidentiary facts as to the ultimate fact of whether the stockholders intended a sale or an exchange. Whether the transaction constituted a sale or an exchange for income tax purposes depends on the intent of the parties and this intent is to be ascertained from all relevant facts and circumstances, and of necessity the case is largely dependent upon circumstantial evidence. See Rowan v. United States, 5 Cir., 219 F.2d 51. If the determination of this motion for a summary judgment required the trial court to choose between conflicting possible inferences from the evidence the motion should not have been granted. Rowan v. United States, supra; United States v. General Ry. Signal Co., D.C.W. D.N.Y., 110 F.Supp. 422.

In other words, if a finding on the ultimate fact for either party is possible, the movant is obviously not entitled to judgment as a matter of law. There was evidence in this cause consistent with the contentions of each of the parties. The drawing of inferences arising out of the evidentiary facts—whether disputed or undisputed—is ordinarily for the fact finder. Thus, summary judgment must be denied if the evidence is such that conflicting inferences could be drawn therefrom. Caylor v. Virden, 8 Cir., 217 F.2d 739; United States v. Dollar, 9 Cir., 196 F.2d 551; Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101; and see Rowan v. United States, 5 Cir., 219 F.2d 51.

■ Certain factors commonly considered in cases such as this where the court is asked to disregard the form of a transaction for tax purposes are present here, e. g., subordination of the note and "purchase price" balance to other indebtedness; postponement of due dates; collection not enforced, and payments discontinued; no payment of dividends; "thin" incorporation. These and other factors would have supported an inference that the transaction here was not a sale. The plaintiff has devoted six pages of its brief in an attempt to explain away the significance of these factors. This in and of itself convinces the court that the evidence admitted of two contrary, permissible inferences. Plaintiff answers the fact that it has paid no dividends by saying "[c]ertainly the nonpayment of dividends in the early years of corporate existence is not unusual." But the evidence shows that plaintiff paid the Tarzians $156,819.96 on September 30, 1950, as representing the accrued installments under the terms of the "sales" contract, and that plaintiff's net earnings were in excess of $2,000,000 for the ten-month period ending June 30, 1950. Certainly it cannot be claimed that plaintiff was unable to pay dividends, and in view of the payment of $156,819.96 to the Tarzians no need for a dividend was present. On the question of subordination plaintiff argues that this is a common practice among commercial banks dealing with young and still insecure business organizations, and that subordination is not evidence of an equity investment if all essential rights of the creditor are preserved although postponed. But subordination necessarily destroys one of the essential rights of the creditor, and the

willingness to subordinate is indicative of equity investment.

The case of Rowan v. United States, 5 Cir., 219 F.2d 51, cited by both plaintiff and the government, involved a similar attempt by the government to disregard the form of a transaction for tax purposes. The taxpayer's motion for summary judgment was denied and upon trial the government prevailed. The Court of Appeals reversed on the ground that the judgment was clearly erroneous, and stated that the motion for summary judgment could have been granted. But in reaching its decision the court commented, at page 55:

"In what we have said we refer only to the situation where there is no evidence of an intent to make a contribution to capital other than the ratio between debt and stated capital. There are in this case none of the facts authorizing other inferences to be drawn, such as that the initial payments, both capital and advances, were all made for acquisition of capital assets, as in Commissioner of Internal Revenue v. Meridian & Thirteenth Realty Co., 7 Cir., 132 F.2d 182, and Matthiessen v. Commissioner [of Internal Revenue], 2 Cir., 194 F.2d 659; or the issuance of certificates of stock, such as Meridian & Thirteenth Realty Co., supra; or subordination to other indebtedness; or inordinately postponed due date; or agreement not to enforce collection; or provision for payment of 'interest' only out of earnings; or payment of advances as initial funds to start the corporate life, as in Janeway v. Commissioner of [Internal Revenue], 2

Cir., 147 F.2d 602; one of which or a combination of which is present in the usual case of this type that comes before the appellate courts for consideration."

And at page 56:

"There being no evidentiary fact shown on the trial that tends to prove the advances were anything other than debts, the trial court could only find that this is what they were."

The case at bar is precisely the situation that the court in Rowan distinguished. There were evidentiary facts before the District Court that tended to prove that the patent "sales contract" was in reality an exchange for stock or a contribution to capital. Accordingly, the conclusion must follow that on the present state of this record plaintiff has not shown that it is entitled to judgment as a matter of law.

We have not found it necessary to consider the District Court's action in disregarding the government's affidavits, or in denying the government's request to be excused under Rule 56(f) from filing counteraffidavits. The pleadings and the interrogatories and answers thereto on file, together with plaintiff's affidavits, show that plaintiff was not entitled to judgment as a matter of law, and we have not found it necessary to rely on the government affidavits.

Of course, nothing herein should be taken as indicative of our view as to what the ultimate disposition of this cause upon the trial should be.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.