**HEART OF ATLANTA MOTEL, INC.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

**Civ. A. No. 7628.**

United States District Court
N. D. Georgia,
Atlanta Division.

Nov. 19, 1962.

Sutherland, Asbill & Brennan, Atlanta, Ga., for plaintiff.

Charles L. Goodson, U. S. Atty., Atlanta, Ga., for defendant.

MORGAN, District Judge.

On August 20, 1962, the plaintiff Heart of Atlanta Motel, Inc., proceeding under the provisions of Rule 56 of the Federal Rules of Civil Procedure, filed a motion for a partial summary judgment in plaintiff's favor on the issue of the deductibility by plaintiff for federal income tax purposes of interest accrued on loans from its stockholders, on the ground that there is no genuine issue as to any material fact, and that the plaintiff is entitled to a judgment in its favor on this issue as a matter of law. There is another issue in the case involving the proper rate of depreciation allowable on plaintiff's motel, and the purpose of plaintiff's motion is to effect disposition of the interest issue prior to the trial of the depreciation issue. The motion is based on the pleadings, plaintiff's answers to certain interrogatories, and affidavits of plaintiff's stockholders attached to plaintiff's motion.

On October 15, 1962, defendant filed a response in opposition to the motion of the plaintiff for summary judgment, attaching affidavits of J. Patrick Whaley and Herbert J. West on behalf of the defendant, basing its response on these affidavits, the exhibits attached thereto, the plaintiff's response to defendant's request for admissions, and the plaintiff's answers to defendant's interrogatories. The defendant contends that the issue raised by the plaintiff's motion for summary judgment, being whether the Commissioner's determination that certain amounts advanced to the plaintiff by its stockholders were capital contributions and not loans was erroneous, and that the affidavits of J. Patrick Whaley and Herbert J. West, responses to admissions, and answers to interrogatories, referred to above, raise a genuine issue of material fact relating to the case, to-wit: whether the plaintiff's stockholders, in making the said advances to the plaintiff, intended those advances to be a debt or a contribution to capital.

Relevant facts are set forth in the aforementioned affidavits and exhibits attached thereto, the pleadings, and the taxpayer's answers to the Government's interrogatories. These facts may be summarized as follows:

The taxpayer, Heart of Atlanta Motel, Inc., was incorporated under the laws of the State of Georgia, with its principal offices in the City of Atlanta, Fulton County, Georgia. At the time of the stock subscription, March 31, 1955, the stockholders were considering the construction and operation of a motel. The plans for the motel were not completed until October, 1955, but a building permit was obtained in September of 1955. The motel was later constructed and is operated by the taxpayer at the present time.

On May 5, 1955, there were twelve shareholders who had subscribed and paid for 1150 shares of stock at $100.00 per share. Nine of these shareholders held 100 shares each; two shareholders held 50 shares each; and one shareholder, 150 shares. On said date, these shareholders, in consideration of mutual promises, agreed to purchase 50 additional shares each, except for two of the shareholders who agreed to purchase only 25 additional shares each. Such shares were to be purchased within twelve months at a price of $100.00 per share. At that time each of those stockholders further agreed, in consideration of their mutual promises, to make a "loan" to the taxpayer in an amount not to exceed $10,000.00, except that any such "loan" made by two of the shareholders, Jernigan and West, was not to exceed $5,000.00. These "loans" were to be made "on call of" taxpayer's Board of Directors.

On July 20, 1955, the stockholders adopted a resolution which provided that the taxpayer "borrow" $2,500.00 from each stockholder (other than the President, Rolleston) for each 75 shares of

stock owned. On November 16, 1955, another resolution was adopted providing that the taxpayer "borrow" an additional $2,500.00 from each stockholder (other than Rolleston) for each 75 shares owned. Pursuant to these resolutions, on August 1, 1955, the shareholders "loaned" a total of $50,000.00 to the taxpayer. Between August, 1955, and April 20, 1956, an additional amount of $47,500.00 was "loaned" to the taxpayer by its shareholders pursuant to those resolutions. The proceeds obtained from these alleged loans were used by the taxpayer for various purposes, including the purchase of adjacent land, expenses of development and construction, and operational expenses.

On November 16, 1955, the stockholders adopted the following resolution:

"That the books of the corporation be open to receive subscriptions to the capital stock, but not beyond a total of 2,400 shares including the outstanding stock; that all of the present stockholders be given the first opportunity to subscribe to an additional 150 shares of stock and agree to loan $10,000 to the corporation or 75 shares and agree to loan $5,000 to the corporation; that no subscriptions from persons other than the present stockholders shall be accepted without the approval of the present stockholders; * * * "

Subsequent to May 5, 1955, certain individuals purchased shares of stock from the taxpayer at the price of $100.00 per share and contemporaneously made or agreed to make alleged loans to the taxpayer at the rate of $5,000.00 for each 75 shares purchased.

In May, 1956, the stockholders allegedly agreed to lend the taxpayer $3,125.00 for each 75 shares owned. These alleged loans were all made between May 9, 1956, and May 31, 1957. The proceeds of these loans were primarily used to repay the construction loan owed to the Trust Company of Georgia, which loan had

been used to finance the construction of the motel.

On September 10, 1956, the stockholders approved an expansion of an additional 96 units to its motel at the cost then estimated of approximately $850,000.00. At that time the stockholders also approved "loans" to the taxpayer at the rate of $3,500.00 for each 75 shares of stock, and funds totalling $28,500.00 were received from ten of the fifteen stockholders. These funds were used primarily to pay part of the construction costs of the 96-unit addition to the motel.

During the years 1955 to 1958, inclusive, whenever a stockholder sold his shares either to the taxpayer or another shareholder, the taxpayer paid off the loans which had been made under the resolutions of May 5, 1955, May of 1956, and September 10, 1956, in cash, promissory notes, or a combination of both.

Prior to the first due dates of interest payable on the alleged loans, taxpayer's President obtained from each of the stockholders an oral agreement to forego insistence upon payment of interest for a limited period of time. These agreements to permit deferring payment of interest were continued in effect until August 21, 1958, when all due but unpaid interest was paid. After August 21, 1958, all interest payments were made when due.

Although these purported loans were not directly subordinated to the claims of the non-stockholding creditors, the loans made by such creditors were guaranteed or endorsed by some of the taxpayer's stockholders.

The Commissioner of Internal Revenue determined that the "loans" to the taxpayer made by the stockholders were actually capital contributions, and, accordingly, disallowed deduction for the alleged interest accrued in the taxpayer's fiscal years 1956, 1957, and 1958. The taxpayer has challenged this determination by filing a timely claim for refund, and this suit was timely brought on that

claim. This motion for summary judgment is limited to this issue.

The issue in this suit which is being considered on the taxpayer's motion for a partial summary judgment is "whether the taxpayer can deduct as 'interest' paid or accrued within the taxable year on indebtedness" within the meaning of Section 163 of the Internal Revenue Code of 1954, amounts accrued by the taxpayer with respect to alleged loans from its stockholders or whether no deduction is allowable because the accruals represented a "distribution of property * * with respect to its stock" within the meaning of Section 301(a) of the Internal Revenue Code of 1954, i. e., a dividend.

The issue here is whether the monies extended to the taxpayer were loans or capital contributions. If they were loans, then the deduction is allowed, but if they were capital contributions, then no deduction would be allowed. John Kelley Co. v. Commissioner, 326 U.S. 521, 66 S.Ct. 299, 90 L.Ed. 278.

■■ Whether an advance is a loan or is a capital contribution depends on the intent of the parties, and this intent is to be ascertained from all the relevant facts and circumstances. Rowan v. United States, 219 F.2d 51 (C.A.5). The question of intention is a question of fact. Universal Castings Corp. v. Commissioner, 303 F.2d 620 (C.A.7, 1962).

■ There is no single test by which this question may be resolved. This Court must consider all the relevant factors, including the circumstances surrounding the creation of the claimed indebtedness, as well as the terms of the instrument, and the conduct of the parties. Arlington Park Jockey Club v. Sauber, 262 F.2d 902, 905 (C.A.7). One of the relevant tests to determine whether money advanced was a loan or capital contribution is whether the alleged loans were proportional to the stockholdings. Here the resolutions of May 5, 1955, May of 1956, and September 10, 1956, pro-vided for alleged loans which would be in proportion to the stockholdings of each shareholder. Where stockholders make advances in proportion to their stockholdings, this may be held to be evidence of capital contributions. Universal Castings Corp. v. Commissioner, supra.

■ Here the shareholders agreed to forego interest payments on their alleged loans and were not, in fact, paid any interest during the taxable years involved herein. Thus, regardless of the formality of interest provisions in the notes, the fact that the interest payments were not, in fact, made might provide the intent to create a true debt.

It has been held that where the alleged debt is subordinated to those of other creditors, this is evidence that there is not a true debt. Rowan v. United States, supra. Here the notes were not directly subordinated to the debts of non-stockholding creditors, and the loans made by non-stockholding creditors were endorsed or guaranteed by some of the taxpayer's shareholders. Therefore, these shareholders could have, in effect, subordinated their alleged loans by endorsing or guaranteeing loans of non-stockholding creditors.

The loans made pursuant to the resolution of May 5, 1955, appear to be for various purposes, including the purchase of adjacent land, expenses of development and construction, and operational expenses. Additional loans which were made pursuant to the resolution of September 10, 1956, were used primarily to pay the construction costs of a 96-unit addition to the motel. Thus, there is evidence that these loan funds were used to finance construction. Under such a state of fact, it has been held that this is evidence of a contribution to capital. Bijou-Pensacola Corp. v. United States, 172 F. Supp. 309 (N.D.Fla.).

It appears in this case that the stockholders, on May 5, 1955, bound themselves, in consideration of mutual prom-

ises, both to purchase additional stock and to advance money to the corporation. Thus, the purchase of additional shares was conditional upon agreeing to make the loans under evidence submitted by the Government, according to a former stockholder of plaintiff.

Also, it appears that, on November 16, 1955, at a shareholders' meeting, a resolution was passed which provided that any additional stock purchased by a shareholder would be coupled with an agreement to make a loan. All persons who purchased stock after May 5, 1955, contemporaneously made or agreed to make loans. During the years 1955 through 1958, inclusive, whenever a stockholder sold his shares, the taxpayer paid off the loan which had been extended by that stockholder in cash, promissory notes, or both. Thus, under the evidence submitted on this motion, it could be construed that the loans were actually tied to the purchase and sale of the taxpayer's stock. And if this fact be established, this might be convincing evidence that the transaction was a capital contribution and not a loan. Universal Castings Corp. v. Commissioner, supra.

This Court cannot, at this time, determine from the pleadings, affidavits, and answers to interrogatories whether these noteholders were investors or creditors. The Court feels that an issue of fact exists and that a summary judgment on the issue involved could not properly be granted in favor of the plaintiff at this time. Before a summary judgment may be granted in favor of a party, the Court must first determine whether there is the absence of any genuine issue as to any material fact. Rule 56(c), Federal Rules of Civil Procedure. If any material fact is in question, the case should go to trial to determine that. Southern Rail & Equipment Co. v. Midwest Mfg. & Plating Co., 178 F.2d 390 (C.A.7).

The plaintiff's motion for summary judgment is denied.

It Is So Ordered.