**The 1661 CORPORATION, Plaintiff,**

v.

**Laurie W. TOMLINSON, District Director of Internal Revenue for the District of Florida, Defendant.**

No. 64–171–Civ–J.

United States District Court
M. D. Florida,
Jacksonville Division.

Sept. 16, 1965.

William T. Rogers, Donahoo & Rogers, Judson Freeman, Bryant, Freeman, Richardson & Watson, Jacksonville, Fla., for plaintiff.

Edward F. Boardman, U. S. Atty., Jacksonville, Fla., J. Patrick Whaley, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

McRAE, District Judge.

This is a suit for refund of income taxes and interest claimed by plaintiff to have been illegally and erroneously assessed against and collected from plaintiff by defendant for the years 1960, 1961 and 1962.

Upon audit by defendant of plaintiff's income tax return for each of these years, a claimed deduction for interest paid or accrued on debentures issued by plaintiff to its stockholders was disallowed on the grounds that the debentures represented capital contributions and not loans made by the stockholders to the corporation, and that the payments or accruals accordingly constituted a reduction in capital and not the payment or accrual of interest.

The sole question for determination, as has been stipulated by the parties, is whether or not the cash advances in the amount of $138,400.00 made to plaintiff by its stockholders constitute "indebtedness" within the meaning of Section 163 (a) of the Internal Revenue Code of 1954.

Section 163(a) provides in pertinent part as follows:

"(a) General rule.—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness."

Most of the material facts of this case are set forth in a comprehensive stipulation between the parties which was filed in evidence as plaintiff's Exhibit A.

In summary, plaintiff was chartered under the laws of Florida as a corporation for profit on December 12, 1955, for the primary purpose of constructing, owning and operating a professional office building in Jacksonville, Florida, for the benefit of its stockholders. By the terms of its charter, plaintiff was authorized to borrow money and generally to do everything necessary for the accomplishment of its primary purpose.

The authorized capital stock of the corporation, as provided by an amend-

ment to the charter, was 560 shares with par value of $100.00 each.

At the organizational meeting of the corporation, subscriptions were received for 180 shares of its stock, and at the same time each stockholder agreed to lend to the corporation $400.00 for each share subscribed, such loans to bear interest at the rate of 7% per annum with the principal to be payable after discharge of the corporation's indebtedness incurred for the construction of its building. It was also agreed at the organizational meeting that all persons occupying space in the building be required to enter into leases with the corporation, upon such terms and conditions as might be determined by the board of directors.

Following the organizational meeting, the stockholders had other meetings to discuss plans for the building and its financing, and each subscribed for additional stock and made loans to the corporation in the same proportion as the initial subscriptions and loans. A construction loan of $250,000.00, with interest at 5½%, was also obtained from Knight, Orr & Company and a permanent first mortgage loan was obtained from Aetna Life Insurance Company for $275,000.00, with interest at 5½%, amortized over a term of 18 years. Furthermore, a second mortgage loan was obtained from Foremost Properties, Inc., for $40,000.00, with interest at 6%, payable within 10 years, a $9,000.00 unsecured loan was obtained from The Atlantic National Bank, and $4,500.00 in loans were obtained from each of two stockholders. Unsuccessful attempts were made to obtain additional loans from outside sources.

At a directors' meeting in February 1957, a "Stockholder's Loan Sinking Fund" was established, into which surplus earnings to the extent of $10,000.00 per year, if available, would be deposited. This Fund was to be used for repayment of the stockholder loans.

In August 1957, the directors authorized the issuance of the corporation's debentures as evidence of and security for the stockholders' loans. These debentures were to be payable on or before 19 years after date, with interest at 7% per annum, payable semi-annually, and to accumulate if not paid. No dividends were to be paid on the common stock so long as any interest on the debentures remained unpaid. The debentures were secured by a pledge of the full faith and credit of the corporation and by a pledge of the building rentals to the extent that such rentals were not previously pledged or assigned as security for mortgage loans, and were also secured by a pledge of any funds in the "Stockholder's Loan Sinking Fund."

During the years herein involved, 346 shares of $100.00 per value stock were outstanding in the hands of 15 stockholders, and debentures held by these stockholders were in the total amount of $138,400.00. The construction loan of $250,000.00, the second mortgage loan of $40,000.00, the $9,000.00 Atlantic National Bank loan, and the two $4,500.00 loans made by the two stockholders were all previously paid, leaving outstanding only the $275,000.00 first mortgage loan and the debentures.

The deductibility of the interest on these debentures presents the question involved in this case. The answer to this question hinges upon whether or not the advances made to the corporation by its stockholders, as evidenced by the corporation's 19-year debentures, were contributions to capital as contended by defendant or were loans as contended by plaintiff. If the advances were in fact loans, the interest paid or accrued thereon is deductible; but if the advances represent contributions to capital, they are not deductible.

Numerous courts have been faced with this problem in recent years, reaching various and sometimes even conflicting results. Fortunately, however, the Fifth Circuit Court of Appeals, and even this Court, have considered the problem in cases which appear to give reliable guidelines for determination of the present case.

In Montclair, Inc. v. Commissioner, 318 F.2d 38 (5th Cir. 1963), the Court laid

down the following criteria to be considered in determining this question:

"'There are at least eleven separate determining factors generally used by the courts in determining whether amounts advanced to a corporation constitute equity capital or indebtedness. They are (1) the names given to the certificates evidencing the indebtedness; (2) the presence or absence of a maturity date; (3) the source of the payments; (4) the right to enforce the payment of principal and interest; (5) participation in management; (6) a status equal to or inferior to that of regular corporate creditors; (7) the intent of the parties; (8) "thin" or adequate capitalization; (9) identity of interest between creditor and stockholder; (10) payment of interest only out of "dividend" money; (11) the ability of the corporation to obtain loans from outside lending institutions.' O. H. Kruse Grain & Milling Co. v. Commissioner [of Internal Revenue], 9th Cir. 1960, 279 F.2d 123, 125. See Mertens Federal Income Taxation § 26.10c."

Applying these criteria to the present case, we find:

1. *Name.* The instruments evidencing the indebtedness are called "debentures", and are in form and substance debentures. All references in the corporation's minutes and books of account are to "loans."

2. *Maturity Date.* The debentures have a definite maturity date, to-wit, 19 years after date.

3. *Source of Payment.* Payment is required to be paid from corporate funds, not necessarily from earnings and profits.

4. *Right to Enforce Payment.* There is a definite right to enforce payment upon default or at maturity.

5. *Participation in Management.* The debenture holders as such have no right to participate in management.

6. *Relationship to General Creditors.* The rights of the debenture holders are equal to those of general creditors.

7. *Intent of Parties.* The form of the instrument itself, as well as corporate minutes authorizing it, plainly show that both the corporation and the lenders intended to create an unconditional and legally enforceable obligation for the payment of money.

8. *"Thin" or Adequate Capitalization.* The ratio of debt to capital was not excessive. The ratio of debentures to stock was 4 to 1.

9. *Identity Between Creditor and Stockholder.* The stockholders and debenture holders were one and the same.

10. *Source of Interest Payment.* Interest was payable out of general corporate funds with no obligation to pay the same out of "dividend" money.

11. *Ability of Corporation to Obtain Loans Elsewhere.* The corporation was unable to get adequate loans from outside sources, although it was able to obtain some money from such sources.

■ Substantially all of the criteria adopted by the Fifth Circuit Court of Appeals accordingly support the contention of plaintiff that the debentures are evidences of indebtedness.

■ Defendant contends that the debt-capital ratio is excessive. The Fifth Circuit Court of Appeals and this Court have heretofore rejected the "thin capitalization" theory, except as a factor to be considered together with all other facts in the case. The intent of the parties, determined by a fair consideration of the criteria as laid down in *Montclair*, is the controlling consideration in every case and will be recognized by the courts. Rowan v. United States, 219 F.2d 51 (5th Cir. 1955); Daytona Marine Supply Co. v. United States, 7 AFTR 2d 1650 (M.D. Fla. 1961); Campbell, Jr. v. Carter Foundation Production Co., 322 F.2d 827 (5th Cir. 1963); Sun Properties, Inc. v. United States, 220 F.2d 171 (5th Cir. 1955).

Judge Tuttle, speaking for the Court in *Rowan*, stated that there is no authority for the proposition that stockholders of a corporation may not determine just how much they care to risk in the form of capital and how much, if any, they are willing to commit as a creditor. He further points out that stockholders are free to invest capital in their corporation's obligations and to advance additional amounts to assist in its operations, if that is their true intent, thereby always reserving the right to share with other creditors in the distribution of assets in the event of corporate failure.

In *Rowan*, the case of Wilshire & Western Sandwiches, Inc. v. Commissioner, 175 F.2d 718 (9th Cir. 1949) is cited with approval. In the latter case, it was held that the indebtedness must be recognized where the intent of stockholders is to become creditors so that they may participate equally with other creditors, and that it is immaterial that the debt was created in connection with the organization of the corporation, or that it was in the same proportion as the stockholdings, or that it was paid out of current earnings.

In Daytona Marine Supply Co. v. United States, *supra*, my Brother Simpson, relying primarily on the decision in *Rowan*, held:

"* * * Under the rule of the Rowan case, the intention to create a bona fide debtor-creditor relationship is significant. Such intention is clearly reflected in the cases before me. Also, there is no authority in this Circuit under the Rowan case for the proposition that corporate stockholders may not determine how much of their funds they care to risk in the form of capital and how much they care to risk as creditors. The mere fact that a more favorable tax treatment may result from the way in which the plaintiff corporations' stockholders and directors conducted its affairs does not entitle the Commissioner to revise or rewrite the corporations' books and to show to

be capital what was intended at all times to be a loan or indebtedness."

The interest deductions in question were proper and the additional taxes assessed against and collected from plaintiff should be refunded to plaintiff, together with interest thereon as provided by law.

Judgment will be entered accordingly.