Joe E. Mellen and Lila Mellen v. Commissioner.
Mellen v. Commissioner
Docket No. 2921-66
United States Tax Court
T.C. Memo 1968-94; 1968 Tax Ct. Memo LEXIS 204; 27 T.C.M. (CCH) 433; T.C.M. (RIA) 68094; May 22, 1968. Filed William R. Bagby, for the petitioners. W. Gerald Thornton, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency in the Federal income tax of petitioners for the calendar year 1961 in the amount of $2,081.74. The sole issue for determination is whether petitioners are entitled to a deduction for a nonbusiness bad debt in the amount of $9,800. Findings of Fact Some of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is hereby incorporated by this reference. Joe E. Mellen (hereinafter referred to as Joe) *205 and Lila Mellen, were at the time material hereto husband and wife. The pleadings reveal that at the time of the filing of the petition herein, Joe's legal residence was at Lexington, Kentucky, and Lila Mellen's legal residence was at Plainfield, Indiana. They filed a joint Federal income tax return for the calendar year 1961 with the district director of internal revenue at Louisville, Kentucky. During the calendar year 1961, Joe was married to Lila Mellen, and Jean Hisgen (hereinafter referred to as Jean) was married to Doris Hisgen. Lila Mellen and Doris Hisgen are sisters. Early in 1961, Jean lost his job with the State of Kentucky. At that time he was 39 years of age, in good health, married, and had two children. Joe, in order to assist Jean, agreed to aid him in establishing an Avis Rent-A-Car business in Owensboro, Kentucky. At that time Joe operated a successful Hertz Rent-A-Car business in Lexington, Kentucky. To effectuate this purpose Joe drew checks on the Citizens 434 Union National Bank and Trust Co. in Lexington, payable to Jean, as follows: Date
Amount
March 15, 1961
$5,000
April 3, 1961
500
April 25, 1961
2,800
April 27, 1961
1,000
June 23, 1961
200
July 11, 1961 300
Total
$9,800
*206 A few days after the date of the final check, Jean and Doris Hisgen executed an unsecured promissory note in the face amount of $9,800 payable to Joe and Lila Mellen. The note was back-dated to March 15, 1961, the date of the first check, and was due on March 15, 1962, with interest at 5 percent. Sometime after March 15, 1961, and presumably prior to June 23, 1961, Jean organized Hisgen, Inc., for the purpose of running a Texaco service station and an Avis Rent-A-Car business. Jean owned all but one share of the outstanding stock of the corporation. The corporation was primarily financed by the monies loaned by Joe. In addition to the money borrowed from Joe, Jean also borrowed $1,000 each from Bernard Young and John Bird. Part of the monies was utilized for downpayments on two automobiles, two trucks with van bodies, and to acquire the Avis franchise. Jean financed the balance of the cost of his rolling stock by loans from the Owensboro National Bank secured by mortgages on the vehicles. In addition to these vehicles, Jean's personal automobile was at the disposal of the business. Finally, the lot and station thereon were leased from Texaco. The venture proved to be a failure. *207 By December of 1961 Jean was in arrears on the payments on the vehicles. He was also considerably in arrears on the mortgage payments on his home. From January to March of 1962, the various vehicles were sold in order to satisfy their respective mortgages. None of the debts owed by Jean, namely those owed to Joe, Bernard Young, and John Bird, have ever been repaid. Likewise, no interest has ever been paid on the debt owed to Joe. When the loans were made by Joe to him, Jean was solvent. He had assets and liabilities on March 15, 1961, as follows: Assets:
Equity in house and lot
$ 850.00
Automobile, 1959 Buick
1,733.33
Automobile, 1955 Chevrolet
900.00
Furniture and fixtures 1,200.00
Total
$4,683.33
Liabilities:
Notes - Bernard Young
$1,000.00
John Bird
1,000.00
Loan payable to Milton Yonker
300.00
Automobile loan 500.00
Total
$2,800.00
During the period March 15, 1961, through July 11, 1961, as noted above, Jean received a loan in the sum of $9,800 from Joe, and conversely acquired a liability for that amount. By December 31, 1961, Jean was insolvent. The stock he held in Hisgen, Inc., was worthless. His total assets were far less than *208 his total liabilities. He had also fallen considerably behind on his home mortgage payments, and the house was sold in early 1962. Throughout 1961 Joe was aware of Jean's financial condition. He has remained aware of that condition since 1961. On advice of counsel that it would be to no avail, Joe has never pressed Jean for repayment of the loan. He considered such to be impractical due to Jean's continuing insolvency. Jean is presently employed as a painter earning approximately $2 per hour and is still insolvent. At the time of the original loans both Joe and Jean fully expected the money to be repaid. On their return for the calendar year 1961, petitioners claimed a nonbusiness bad debt deduction in the amount of $9,800. Respondent in his statutory notice of deficiency has disallowed the deduction. Ultimate Finding of Fact A vaild debt existed between Jean and the petitioners, and such debt became worthless in the taxable year 1961. Opinion The sole issue for determination is whether petitioners are entitled to a deduction for a nonbusiness bad debt in the amount of $9,800. Respondent contends that petitioners have failed to establish that a debtor-creditor relationship *209 ever existed between them and Jean. He also contends, assuming arguendo that a debt did exist, that petitioners have failed to prove that the debt became worthless during the taxable year 1961. 435 We think that on the basis of the record before us petitioners have met their burden on both points. We, therefore, conclude that they are entitled to a nonbusiness bad debt deduction in the amount of $9,800. Section 166(d)(1)(B), Internal Revenue Code of 1954, provides that in the case of a taxpayer other than a corporation: (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The regulations thereunder provide as follows: Sec. 1.166-1(c). Bona fide debt required. Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship *210 based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. A gift or contribution to capital shall not be considered a debt for purposes of section 166. The fact that a bad debt is not due at the time of deduction shall not of itself prevent its allowance under section 166. Sec. 1.166-2(a). General rule. In determining whether a debt is worthless in whole or in part the district director will consider all pertinent evidence, including the value of the collateral, if any, securing the debt and the financial condition of the debtor. (b) Legal action not required. Where the surrounding circumstances indicate that a debt is worthless and uncollectible and that legal action to enforce payment would in all probability not result in the satisfaction of execution on a judgment, a showing of these facts will be sufficient evidence of the worthlessness of the debt for purposes of the deduction under section 166. In order for petitioners to prevail, the evidence must clearly demonstrate that it was the intent of the parties to establish a debt in fact, that is to *211 create the debtor-creditor relation. In the cases of intra-family transfer of money, the transactions are subject to the closest scrutiny. Estate of Carr V. Van Anda, 12 T.C. 1158 (1949), affd. per curiam 192 F. 2d 391 (C.A. 2, 1951). Both Joe and Jean testified categorically that at the time of the advances to Jean they both fully expected that the amounts advanced would be repaid. The record does not reveal any indication that a gift was either intended by Joe or imagined by Jean. The consistency of this testimony was in no way impaired by respondent's cross-examination, nor do we have any doubt as to its credibility. Such uncontradicted testimony should not be disregarded except where it is so improbable or unreasonable as to be unbelievable. Carmack v. Commissioner, 183 F. 2d 1, 2 (C.A. 5, 1950), affirming a Memorandum Opinion of this Court, certiorari denied 340 U.S. 875 (1950); Frank Imburgia, 22 T.C. 1002, 1018 (1954). Such is not the case before us. Respondent has argued that Joe's lack of effort to enforce payment precludes a finding of the existence of valid debt. Such an assertion is not supported *212 by the record. Joe was, at all times pertinent hereto, well aware of Jean's financial condition. Consequently, he was aware and was advised by an attorney that any attempt to enforce payment would be to no avail. Under such circumstances his lack of effort to attempt to enforce payment is adequately explained and does not negate the finding by this Court that there existed a bona fide debt. See and compare Income Tax Regs., section 1.166-2(b), supra. Respondent has, on brief, conceded the legality and enforceability of the note. We, therefore, hold that the advances in question constituted a bona fide debt in the hands of the petitioners. We now turn to respondent's second contention, namely that petitioners have not shown that the debt became worthless in the taxable year 1961. Again, we are of the opinion that petitioners have met their burden of proof. In order to be entitled to a deduction for a nonbusiness bad debt, petitioners must demonstrate that the debt became totally worthless during the taxable year. Whether a debt is totally worthless within a particular taxable year is a question of fact. Earl V. Perry, 22 T.C. 968 (1954). *213 The record reveals that Jean was solvent at the time the advances were made and at the time that the note was signed by him and Doris Hisgen. Respondent has pointed to various inconsistencies in the financial statements prepared by Jean. Even with these corrections suggested by respondent, the exhibits, introduced by respondent, are sufficient to demonstrate Jean's solvency during the earlier part of 1961 and his insolvency as of December 31, 1961. Jean's 436 testimony regarding the worthlessness of the Hisgen, Inc., stock on December 31, 1961, was uncontradicted, and is amply supported by the windup and dissolution of the business early in 1962. The difference, if any, between his financial condition at this point in 1962 and that existing on December 31, 1961, was de minimis. This Court is aware that the mere insolvency of the debtor standing alone is not proof of the worthlessness of the debt. Rowan v. United States, 219 F. 2d 51, 56 (C.A. 5, 1955). The Court must look at all pertinent evidence. Income Tax Regs., section 1.166-2(a), supra. The record reveals that the loans were unsecured. The expected source of repayment, Jean's *214 auto rental business, had proved, to say the least, to be unsuccessful, and his stock in Hisgen, Inc., was worthless. The record reveals that the assets of the business when sold brought only enough money to pay off the mortgage to which each of them was subject. He had also fallen substantially behind in his home mortgage payments. These circumstances and the record as a whole make it clear that the loan was uncollectible and that, as noted earlier, a legal action would be futile. Finally, though Jean was in good health, his prospects were dim. Respondent urges that Jean's financial situation may improve considering his youth and health. The evidence, however, demonstrates that as of the time of trial, almost six years later, such has not in fact been the case. We think that such a possibility is, on these facts, too remote to defeat petitioners' claim herein. They need not be incorrigible optimists. See United States v. White Dental Co., 274 U.S. 398 (1927). Decision will be entered for the petitioners.