In re **COORS OF NORTH MISSISSIPPI, INC.,** Old South Coors, Inc.

**COORS OF NORTH MISSISSIPPI, INC., Plaintiff,**

v.

**BANK OF LONGVIEW, Planters Bank and Trust Company, and First National Bank of Clarksdale, Defendants.**

**COORS OF NORTH MISSISSIPPI, INC., Plaintiff,**

v.

**Charles E. MOAK and Moak Bottling Co., Inc., Defendants.**

**COORS OF NORTH MISSISSIPPI, INC., and Old South Coors, Inc., Plaintiffs,**

v.

**Charles E. MOAK and Moak Bottling Co., Inc., Defendants.**

**Bankruptcy Nos. E83–10017, E83–10018. Adv. Nos. 83–1106, 83–1270 and 83–1278.**

United States Bankruptcy Court, N.D. Mississippi.

Sept. 18, 1986.

**850**

Frank W. Trapp, Jones, Mockbee, Bass & Hodge, Jackson, Miss., for Coors of North Mississippi, Inc.

Frank O. Crosthwait, Jr., Crosthwait, Terney & Noble, Indianola, Miss., and James W. Newman, III, Jackson, Miss., for Charles E. Moak and Moak Bottling Co., Inc.

W. Dean Belk, Indianola, Miss., for Planters Bank & Trust Co.

Douglas J. Smith, Jr., Robertshaw, Terney & Noble, Greenville, Miss., for Unsecured Creditors' Committee of Old South Coors, Inc.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

Came on for consideration in Adversary Proceeding No. 83–1270, the complaint filed by Coors of North Mississippi, Inc., hereinafter referred to as Coors of North Mississippi, against Charles- E. Moak and Moak Bottling Co., Inc., hereinafter referred to respectively as Moak and Moak Bottling, to set aside fraudulent conveyances pursuant to 11 U.S.C. § 548(a), as well as, to avoid preferential transfers pursuant to 11 U.S.C. § 547(b); answers and affirmative defenses having been filed by the said defendants; on consideration in Adversary Proceeding No. 83–1278, the complaint filed by Coors of North Mississippi and Old South Coors, Inc., hereinafter referred to as Old South Coors, against Moak and Moak Bottling, to set aside fraudulent conveyances pursuant to 11 U.S.C. § 548(a),

and to avoid preferential transfers pursuant to 11 U.S.C. § 547(b); answers and affirmative defenses having been filed by said defendants; as well as, on consideration in Adversary Proceeding No. 83–1106, the motion to marshal assets filed by Coors of North Mississippi against Bank of Longview, Planters Bank and Trust Company, hereinafter referred to as Planters Bank, and First National Bank of Clarksdale; responses to said motion having been filed by said defendants; all parties being represented by their respective attorneys of record; on the presentation of proof in open court and the submission of written memoranda; and the Court having heard and considered same hereby finds as follows, to-wit:

### I.

This Court has jurisdiction of the parties to and the subject matter of these proceedings pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, in addition to the general orders of reference executed by the United States District Court for the Northern District of Mississippi, dated July 27, 1984, and August 6, 1984. These matters are core proceedings as defined in 28 U.S.C. § 157(b)(2)(A), (F), (H), (K), and (O).

### II.

The post-trial motion filed on behalf of Coors of North Mississippi to amend its motion to marshal assets to add the alternative relief of equitable subordination pursuant to 11 U.S.C. § 510, was previously overruled by the Court as being untimely filed to be considered along with the adversary and contested proceedings delineated hereinabove.

### III.

#### STATEMENT OF FACTS

The events of these proceedings began when the Adolf Coors Company, the bottler of Coors Beer products, announced its intention to expand its distribution network into the eastern United States. On April 9, 1981, Charles E. Moak was approved for a

Coors franchise in the northwestern part of the State of Mississippi, and subsequently entered into a franchise agreement with the Adolf Coors Company. Ben Brewer, Harry Allen, and others had secured a Coors franchise in the northeastern part of the State of Mississippi and had commenced a beer distribution business under the name of Old South Coors, Inc. As Moak began to organize the beer distribution business, he required a line of credit to purchase inventory, machinery, equipment, furniture, and supplies. Moak negotiated a loan with Planters Bank and Trust Company for the purpose of acquiring the aforementioned assets, which were ultimately to become the property of Coors of North Mississippi, a corporation which was to be subsequently organized. This Court is of the opinion that at all times both Moak and Planters Bank intended this loan to be for corporate purposes, i.e., for the benefit of Coors of North Mississippi, all as specifically stated in the Planters Bank commitment letter to Moak, dated February 23, 1981.

From April, 1981, through August, 1981, Moak purchased all of the necessary assets, including vehicles, to begin the operations of Coors of North Mississippi in both Indianola, Mississippi, and Clarksdale, Mississippi. All this property was purchased for use by Coors of North Mississippi and was paid for from the proceeds of the several loans extended by Planters Bank. These loans were secured by real property located in Tallahatchie County, Mississippi, owned by Moak's wife, Mrs. Betty Moak.

Coors of North Mississippi was officially chartered in late April, 1981, through the issuance of a certificate of incorporation by the Mississippi Secretary of State. Moak was the president and principal shareholder of the corporation. Moak, his wife, and son, Robert Moak, comprised the original board of directors of the corporation.

On September 2, 1981, Mr. and Mrs. Moak and Coors of North Mississippi executed a renewal note combining all twelve (12) of the previous notes used for the purchase of the assets, necessary to commence the beer distributorship business.

This note was in the sum of $615,094.63, and was secured in part by the aforementioned inventory, equipment, etc. At the time of the execution of this note, Coors of North Mississippi became vested with title to all of the assets acquired by Moak for the benefit of the corporation, using the proceeds of the earlier loans. There was no contradiction to the fact that all of the earlier loan proceeds were utilized for legitimate business purchases and expenses, all inuring to the benefit of Coors of North Mississippi. Planters Bank required Mr. and Mrs. Moak to co-sign the corporate note, as well as, required the continuance of the lien on the real property owned by Mrs. Moak as noted hereinabove.

During the fall of 1981, Ben Brewer and Harry Allen approached Moak and offered to purchase the Coors of North Mississippi franchise, which, coupled with the franchise area of Old South Coors, would give the Brewer group the exclusive Coors franchise for all of north Mississippi. After concluding negotiations, which extended over several months, Brewer, Allen, Kenneth Krei, a certified public accountant, and Kit Thompson, hereinafter referred to as purchasers or purchasing group, bought Moak's stock in Coors of North Mississippi, closing the transaction on April 26, 1982. Significantly, the effective date of the closing related back to the financial condition of Coors of North Mississippi, effective December 31, 1981.

Prior to the closing on April 26, 1982, the purchasing group, particularly Kenneth Krei, had access to all financial records maintained by Coors of North Mississippi, as well as, the opportunity to consult with its accountant, John Maggio.

One aspect of this transaction which has become a center of controversy in these proceedings is the obligation on the part of the purchasers to pay or refinance the sum of $614,094.63, generally acknowledged to be a debt owed to Planters Bank. Initially, this obligation was to be paid by the purchasers on the date of closing, but the payment date was extended thirty (30) days subsequent to the closing date. The stated

purpose of the payment was to release Moak, and all those in privity with him, from the indebtedness in favor of Planters Bank, as well as, to gain the release of all security granted by Moak, and those in privity with him, from the lien existing in favor of the bank. The memorandum agreement regarding the purchase of corporate stock states, "More specifically, PURCHASER shall have thirty (30) days from and after April 26, 1982, within which to effect the payment, refinancing or assumption of the obligation in favor of Planters Bank and Trust Company, and thereby secure the release of Charles Moak, those in privity with him, and their collateral." (See Plaintiff's Exhibit 11, page 6.)

At trial, there was a great deal of discussion as to whether this indebtedness was owed by Coors of North Mississippi to Moak, who then, in turn, owed Planters Bank, or whether the obligation was owed directly by Coors of North Mississippi to Planters Bank, eliminating Moak as an intermediary. Because the purchasers had ample access to the financial records of Coors of North Mississippi, the Court is of the opinion that they well knew that this obligation was owed by Coors of North Mississippi directly to Planters Bank, rather than to Moak. The Court has already found that the indebtedness in question was incurred for the benefit of Coors of North Mississippi, so the distinction has little significance on the ultimate outcome of these proceedings.

Another controversial part of this transaction involved the purchasers' agreement to acquire a tract of land consisting of .636 acres, more or less, owned by Moak Bottling for the total purchase price of $275,000.00. Originally, the purchasers had agreed to pay Moak this amount of money as a part of the stock acquisition, but the Adolf Coors Company refused to permit the payment which it felt was excessive. Hence, the parties restructured the transaction to add the sale of the realty for a purchase price in the identical sum of money. This aspect of the transaction was in addition to the granting of an easement by

Moak Bottling in favor of Coors of North Mississippi, which was to be utilized as a driveway by Coors of North Mississippi for the payment of sixty (60) monthly installments of $100.00, beginning May 1, 1982. The attorney for the Plaintiffs argued that the area comprising the easement property was included within the property conveyed directly by Moak Bottling to the purchasers. This contention appears to be correct, but a comparison of the legal description of the easement property to the legal description of the property conveyed in fee does not conclusively prove this point. (See Plaintiff's Exhibit 14, which describes approximately one-fourth of an acre, compared to Exhibit A, Plaintiff's Exhibit 13, which describes .636 acres.) The contract for sale and purchase of real estate, (Plaintiff's Exhibit 13), required a down payment of $50,000.00, plus the execution of a promissory note for the purchase price balance in the sum of $225,000.00, bearing interest at the rate of 15% per annum, and payable in eighty-four (84) monthly installments of principal and interest in the sum of $4,341.78, beginning July 1, 1982. Moak received four payments on this obligation from Coors of North Mississippi and Old South Coors, all of which were applied to the Coors of North Mississippi indebtedness to Planters Bank. These were the only payments received since the property was ultimately foreclosed by the Bank of Longview following the purchasers' default on the loan discussed in the paragraph following.

The purchasers subsequently received a loan from the Bank of Longview in the principal sum of $600,000.00. $550,000.00 of the loan proceeds were released, but the Bank of Longview withheld the remaining $50,000.00. From the released funds, a total of $350,000.00 was paid on the Planters Bank indebtedness in two installments, i.e., a $250,000.00 check issued directly to Moak, who, in turn, paid Planters Bank, and a $100,000.00 wire transfer paid directly to Planters Bank from the Bank of Longview. The purchasers used the re-

maining $200,000.00 to acquire inventory. for Coors of North Mississippi.

While negotiations were on-going between Moak and the purchasers, Moak was compelled to borrow the total sum of $90,000.00 from Planters Bank. $50,000.00 of this amount was borrowed on February 5, 1982, evidenced by a promissory note due September 1, 1982. (See Plaintiff's Exhibit 10.) This note was secured by the identical collateral securing the Coors of North Mississippi note to Planters Bank plus a personal certificate of deposit owned by Moak in the sum of $24,000.00. The remaining $40,000.00 was borrowed on April 20, 1982, evidenced by a promissory note due May 20, 1982. (See Plaintiff's Exhibit 12.) This note was secured by the identical collateral as the $50,000.00 note, mentioned immediately above. Initially, these notes were considered by Planters Bank as paid following receipt of the $250,000.00 check, dated September 17, 1982, drawn on the Old South Coors bank account and payable to Moak. (See Plaintiff's Exhibit 18.) However, the bank reversed this entry and credited the full amount of the $250,000.00 payment, as well as, the subsequent $100,000.00 wire transfer, to the Coors of North Mississippi $615,094.63 note. Moak still remains liable to Planters Bank for the payment of the $90,000.00 obligations, which he considers as his contribution to the capital of Coors of North Mississippi, as well as, in keeping with his agreement to pay all debts of Coors of North Mississippi outstanding as of the date of the stock transaction closing, other than those obligations which were specifically assumed by the purchasers.

In addition to the receipt of $350,000.00, which was applied to the Coors of North Mississippi indebtedness, Planters Bank subsequently received a payment of $100,000.00 directly from Ben Brewer, as well as, approximately $80,000.00, which represented escrowed sales proceeds, received when the Coors of North Mississippi equipment was sold. Planters Bank had never released its lien on the equipment since the Coors of North Mississippi indebtedness was not paid in full subsequent to the closing of the stock purchase transaction. The Bank of Longview obtained a lien on this equipment when extending the $600,000.00 loan to the purchasers, but conceded that its lien was inferior to that held by Planters Bank. This matter will be more fully discussed hereinbelow under the marshaling of assets issue.

Prior to the filing of its bankruptcy petition on January 18, 1983, Coors of North Mississippi showed a profit only during the month of September, 1981. The balance sheet of the corporation showed a substantial excess of liabilities over assets. The working capital of the corporation was always reflected as a deficit figure. However, the purchasers of Moak's corporate stock were well aware of these factors when negotiating the transaction. This is evidenced by the comment of Allen to the effect that they (the purchasers) thought they could sell more beer than Moak, and as such, that they could make Coors of North Mississippi a profitable operation.

Subsequent to closing the stock purchase transaction, and pursuant to the memorandum agreement, Moak resigned as an officer and director of Coors of North Mississippi. Moak's remaining obligations were to pay certain outstanding accounts payable, which he did, as well as, to conclude certain transactions on behalf of Coors of North Mississippi which were in progress prior to the date of closing. Moak continued to maintain a checking account at Planters Bank to pay these remaining debts, for which he assumed responsibility, while the purchasers opened and maintained a separate checking account at Peoples Bank of Indianola. Ben Brewer became the general manager and chief operating officer of Coors of North Mississippi. After April 26, 1982, Moak exercised no apparent control over the operations of Coors of North Mississippi, other than casual advice to the purchasers. Moak had no decision making authority subsequent to his resignation, nor did his son, Robert Moak, who was retained as an employee by Coors of North Mississippi as a part of the agreement. There will be further comment

on this point subsequently in this opinion when the issue is addressed of whether Moak was an insider, as that term is defined in the Bankruptcy Code, to Coors of North Mississippi.

## IV.

### ISSUE NO. 1. SALE OF MOAK'S COORS OF NORTH MISSISSIPPI STOCK TO BREWER, ALLEN, KREI, AND THOMPSON.

The sale of Moak's corporate stock in Coors of North Mississippi was accomplished generally pursuant to the terms and provisions of two agreements. The first agreement, dated March 5, 1982, (Plaintiff's Exhibit 9), included the provision wherein Moak was to be paid the sum of $275,000.00 by Brewer, Allen, Krei, and Thompson, subject to the approval of the Adolf Coors Company. This agreement was comparable to a letter written by Ben Brewer to Moak, dated February 23, 1982, (Plaintiff's Exhibit 8), basically outlining the terms of the agreement, and including the Coors of North Mississippi balance sheet effective December 31, 1981. The second agreement which was executed on April 26, 1982, but dated March 5, 1982, (Plaintiff's Exhibit 11), excluded the $275,-000.00 payment to be made directly to Moak because it had been disapproved by the Adolf Coors Company as being excessive. This second agreement also provided that the $614,094.63, debt to Planters Bank would be paid within thirty (30) days after closing, rather than on the date of closing.

As set forth hereinabove, the stock purchase transaction was negotiated and consummated based on the financial position of Coors of North Mississippi as of December 31, 1981. Without question, the corporate balance sheet, dated December 31, 1981, is certainly in error and is potentially misleading, i.e., the balance sheet reflects a note payable to Moak in the approximate sum of $589,000.00, and stockholders equity in favor of Moak in the sum of $25,-000.00. However, these two figures were disclosed by John Maggio, the certified public accountant employed by Moak

and/or Coors of North Mississippi, to the purchasers prior to the closing as a debt of Coors of North Mississippi, owed to Planters Bank. Whether this total amount was owed by Coors of North Mississippi to Moak, who then, in turn, owed Planters Bank, or directly by Coors of North Mississippi, as a co-maker with Moak, to Planters Bank, is insignificant to this Court. The purchasers were either going to assume the debt obligation to Planters Bank, effective December 31, 1981, subject to the approval of Planters Bank, or they were going to refinance and pay off this obligation, utilizing funds from other sources, within thirty (30) days from the date of closing. The memorandum agreement, (Plaintiff's Exhibit 11), which makes reference to the debt of the seller, Moak, to Planters Bank is not per se incorrect. Moak has always owed Planters Bank from the inception of the line of credit loans, whether as a joint obligor with only his wife, or as a co-maker with Coors of North Mississippi.

When the purchasing group could not pay the full amount of the Planters Bank debt at closing, whether it was in the amount of $614,094.63 or $615,094.63, the memorandum agreement had to be modified to permit the thirty (30) day extension. It is understandable why the attorneys did not re-write the entire agreement, only the paragraph granting the extension.

■ Coors of North Mississippi, whose actions at the time of this trial were being orchestrated by Allen and Krei, complains that the purchasers were not advised that Planters Bank held a lien on the inventory, equipment, etc. (See Plaintiff's Exhibit 17, which sets forth the collateral descriptions in the security agreement and Uniform Commercial Code financing statements.) This complaint has no merit for the following reasons:

(1) The purchasers were represented by competent counsel when this transaction was negotiated and closed. One of the purchasers was and is a certified public accountant, knowledgeable about transactions of this nature. As mentioned herein-

above, Allen and Krei both testified that they were aware of losses experienced by Coors of North Mississippi, but they thought they could turn the company around with new, innovative marketing ideas. They were furnished at closing with a certificate prepared by attorney Frank O. Crosthwait, clearly reflecting the lien of Planters Bank encumbering the equipment. (See Moak Exhibit 6.) None of the purchasers denied that this certificate was furnished, and their attorney, Gary Geeslin, acknowledged its receipt at closing.

(2) If the purchasers had paid the Planters Bank debt pursuant to their agreement, there would have been no lien on the inventory, equipment, etc. As noted several times earlier, it was initially contemplated that this payment would have been made at closing—then within thirty (30) days after closing. The purchasers' attorney recognized that the lien had little significance since it would be extinguished when the debt was paid. Had the purchasers, who were then running the business affairs of Coors of North Mississippi, correctly applied the Bank of Longview loan proceeds, this issue would have been resolved years ago.

In this same context, Coors of North Mississippi advances the argument that the Bank of Longview loan proceeds belonged to Coors of North Mississippi and should not have been used to pay a debt owed by the individual purchasers. Equity and common sense render this position untenable. The $615,094.63 debt had to be paid and everyone was aware of this. The debt was not the debt of the individual purchasers, it was a legitimate corporate obligation, as the Court has already found, owed by Coors of North Mississippi to Planters Bank. The Bank of Longview loan was set up in the name of Coors of North Mississippi, but it would never have been extended without the guarantees of the individual purchasers, particularly the collateralization provided by Ben Brewer's father. In summary, it is simply illogical to take the position that corporate funds were being erroneously used to pay the individual purchasers' debt. Coors of

North Mississippi would have been completely shut down by Planters Bank because of the non-payment of this obligation.

The purchasers were all knowledgeable and experienced businessmen. They entered into this transaction with their eyes open and with all cards on the table. There was no evidence presented that would even give rise to an inference that these purchasers were deceived or defrauded by Moak. It is ironic that the purchasers, who breached the major provisions of the memorandum agreement, are now crying "foul", and are asking this Court to exercise its equitable powers and/or to stretch the thinnest technicalities to rectify their lack of sound business judgment. This comment is not leveled at Ben Brewer, who has chosen not to pursue this case against Moak. For these reasons, the allegations of fraud pled against Moak regarding the stock transfer are not well taken and that part of the Plaintiff's complaint is hereby dismissed with prejudice.

## V.

ISSUE NO. 2. FRAUDULENT CONVEYANCE ALLEGATIONS REGARDING THE EXECUTION OF THE PROMISSORY NOTE TO PLANTERS BANK BY COORS OF NORTH MISSISSIPPI IN THE AMOUNT OF $615,094.63.

The Plaintiffs, Coors of North Mississippi and Old South Coors, have alleged that the execution of the promissory note in favor of Planters Bank in the original principal sum of $615,094.63, by Coors of North Mississippi, is a fraudulent conveyance in violation of 11 U.S.C. § 548(a), as well as, 11 U.S.C. § 544(b). (All further references in this Opinion to United States Code sections should be considered as references to Title 11, United States Code, unless noted otherwise.)

■ The first point to be addressed will be the inapplicability of 11 U.S.C. § 548(a), which reads as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

This bankruptcy case was filed on January 18, 1983. The promissory note executed by Coors of North Mississippi, as well as, Mr. and Mrs. Moak, in favor of Planters Bank was dated September 2, 1981, in the original principal sum of $615,094.63. (See Plaintiff's Exhibit 62.) The execution of the promissory note obviously occurred more than one year prior to the filing of the bankruptcy petition. As such, § 548(a), standing alone, cannot be used as a device to set aside this obligation because of the period of limitations clearly set forth in the language of the statute.

■ In a brief filed subsequent to the trial of these proceedings, counsel for the unsecured creditors committee of Old South Coors, which was permitted to intervene herein, raised for the first time the contention that 11 U.S.C. § 544(b) could be utilized to set aside the obligation of Coors of North Mississippi to repay the indebtedness owed to Planters Bank. § 544(b) is set forth as follows:

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

The primary purpose for raising the question of whether § 544(b), is applicable to these proceedings is merely to escape the one year period of limitations set forth in § 548(a), as discussed hereinabove. § 544(b), permits the trustee or debtor in possession to utilize the state fraudulent conveyance statute, Miss.Code Ann. § 15-3-3 (1972), which is time barred only by the state six year statute of limitations, Miss. Code Ann. § 15-1-49 (1972). Although § 544(b), was untimely raised, and *never pled* by either of the Plaintiffs, it will be addressed since this Court is of the opinion that it is ineffective to set aside the Coors of North Mississippi obligation to Planters Bank. The Court would otherwise not consider this question since it was raised so late in these proceedings to the prejudice of the Defendants.

■ Miss.Code Ann. § 15-3-3 (1972), which would be the applicable fraudulent conveyance statute in Mississippi is set forth hereinbelow:

Every gift, grant, or conveyance of lands, tenements, or hereditaments, goods or chattels, or of any rent, common or other profit or charge out of the same, by writing or otherwise, and every bond, suit, judgment, or execution had or made and contrived of malice, fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties, or forfeitures, or to defraud or deceive those who shall purchase the same

lands, tenements, or hereditaments, or any rent, profit, or commodity out of them, shall be deemed and taken only as against the person or persons, his, her, or their heirs, successors, executors, administrators, or assigns, and every of them whose debts, suits, demands, estates, or interests by such guileful and covinous devices and practices shall or might be in any wise disturbed, hindered, delayed, or defrauded, to be clearly and utterly void; any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.

Moreover, if any conveyance be of goods or chattels, and be not on consideration deemed valuable in law, it shall be taken to be fraudulent within this section, unless the same be by will duly proved and recorded, or by writing acknowledged or proved, and such writing, if the same be for real estate, shall be acknowledged or proved and filed for record in the county where the land conveyed is situated, and, if for personal property, then in the county where the donee shall reside or the property shall be. The proof or acknowledgment in either case shall be taken or made and certified in the same manner as conveyances of lands and tenements are by law directed to be acknowledged or proved, unless, in the case of personal property, possession shall really and bona fide remain with the donee.

And in like manner, where any loan of goods or chattels shall be pretended to have been made to any person, the possession thereof having remained with said person or with those claiming under him for the space of three years without demand made and pursued by due course of law on the part of the pretended lender, or where any reservation or limitation shall be pretended to have been made of a use of property by way of condition, reversion, remainder, or otherwise in goods or chattels, the possession thereof having remained in another or those claiming under him for a space of three years without demand made and pursued by due course of law on the part of the one making such pretended reservation or limitation, the same shall be taken to be fraudulent within this statute as to the creditors and purchasers of the persons so remaining in possession, and the absolute property shall be deemed to be with the possession, unless such loan, reservation, or limitation were declared by will or by writing, proved or acknowledged, and filed for record.

The exceptions to Miss.Code Ann. § 15–3–3 (1972) are found in Miss.Code Ann. § 15–3–5 (1972), which is set forth as follows:

> Section 15–3–3 shall not extend to any estate or interest in any lands, goods or chattels, or any rents, common, or profit out of the same, which shall be upon good consideration and bona fide lawfully conveyed or assured to any person or persons, bodies—politic or corporate, nor shall it in any case extend to creditors whose debts were contracted after such fraudulent act, unless made with intent to defraud them, and though a conveyance or contract be decreed void as to prior creditors, it shall not, on that account be void as to subsequent creditors or purchasers.

This Court has already found, as discussed hereinabove, that the loan transaction entered into on September 2, 1981, between the Moaks and Coors of North Mississippi, as borrowers, and Planters Bank as the lender, was a legitimate corporate obligation, intended as such by the parties from the inception of the line of credit loan transactions commencing early in calendar year 1981. This conclusion is consistent with the testimony of both Moak and James B. Randall, the President of Planters Bank.

Randall indicated that when the loan transaction was closed on September 2, 1981, that for purposes of collateralizing the loan, the bank placed a value of fifty percent (50%) of the total purchase price of the inventory, equipment, etc., which had been acquired by Moak for approximately $600,000.00. This would indicate that there

was reasonable consideration for having Coors of North Mississippi execute the loan because, contemporaneously therewith, Coors of North Mississippi became the bona fide owner of the inventory, equipment, etc., acquired from the proceeds of the notes that Moak had executed earlier. Again, there has been no showing whatsoever of any fraudulent conduct by the requisite standard of clear and convincing evidence, nor has there been a showing that Coors of North Mississippi entered into the loan transaction for less than reasonably equivalent value. Thus, this Court finds that the provisions of Miss.Code Ann. § 15–3–3 (1972), have not been violated, and as such, the jurisdictional or mechanical provisions of Miss.Code Ann. § 11–5–75 (1972) are inapplicable. For reference purposes, the text of this section is set forth below:

The chancery court shall have jurisdiction of bills exhibited by creditors who have not obtained judgments at law, or, having judgments, have not had executions returned unsatisfied, whether their debts be due or not, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering, delaying or defrauding creditors; and may subject the property to the satisfaction of the demands of such creditors as if complainants had judgments and execution thereon returned 'no property found.' Upon such a bill, a writ of sequestration or injunction, or both, may be issued upon like terms and conditions as such writs may be issued in other cases, and subject to such proceedings and provisions thereafter as are applicable in other cases of such writs; and the chancellor of the proper district shall have power and authority to grant orders for receivers, in same manner as if the creditor had recovered judgment and had execution returned 'no property found.' The creditor in such case shall have a lien upon the property described therein from the filing of his bill, except as against bona fide purchasers before the service of process upon the defendant in such bill.

■ The unsecured creditors committee of Old South Coors contends that § 544(b) should apply to this case under the theory that Moak used his position as the chief operating officer of Coors of North Mississippi to obligate the corporation on an individual antecedent debt when the loan transaction was consummated, and in so doing, caused the corporation to become insolvent. This thinking simply goes against the grain of reasonableness inasmuch as Coors of North Mississippi received assets in the form of accounts receivable, furniture, inventory, machinery, and equipment, practically dollar for dollar, in comparison to the liability incurred. This Court will simply not buy the argument that the line of credit obligations incurred by Moak to acquire these assets should be denominated as his contribution to capital. This was never the intention of Planters Bank or Moak, and this Court will not inflict such an inequitable result upon Moak.

■ Counsel for the Old South Coors unsecured creditors committee also urges that § 544(b) is applicable to this factual scenario because an alleged "triggering unsecured creditor" appears in the December 31, 1981, Coors of North Mississippi balance sheet, as well as, the bankruptcy schedules filed subsequently in this case. Since this section was raised so late, neither Moak, Moak Bottling, nor Planters Bank had the opportunity to explain or refute the viability of the Mr. Quick deferred liability claims in the total sum of $20,000.00. This Court is, therefore, left with little or no firm evidence as a basis to form the conclusion that a bona fide unsecured creditor existed that could void the loan transaction entered into between Coors of North Mississippi and Planters Bank on September 2, 1981. Of course, the existence of the creditor is only "step one." There must also be a showing of actual fraud by the requisite standard of proof in violation of the state statutes. It should be remembered that Moak agreed to satisfy all debts of Coors of North Mississippi that were not expressly assumed by the purchasers. There was no testimony that Moak failed to honor all the obligations

that he agreed to undertake. The status of the Mr. Quick deferred liability claims can simply be punctuated with a question mark. This discussion further supports the conclusion that since this issue was not timely raised and litigated at trial, it should not be considered now.

■ Counsel for the Old South Coors unsecured creditors committee, who announced on the record that he was representing, in effect, the Adolf Coors Company, suggests that § 544(b) can be utilized by the debtor in possession, without benefit of a "triggering unsecured creditor", citing *Moore v. Bay*, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931). (Incidentally, it should be noted that the Adolf Coors Company reached a settlement with Moak and/or Moak Bottling, and has executed a mutual release agreement concerning any liabilities that might be owed by Moak and/or Moak Bottling to the Adolf Coors Company.) Regardless of the preceding sentence, the proposition that the debtor in possession can resort to § 544(b) without the benefit of the "triggering unsecured creditor" is simply erroneous. 4 *Collier on Bankruptcy*, § 544.03 (15th Ed.1986), Nature and Extent of Power Created by § 544(b), provides an incisive commentary that is particularly appropriate to the case at bar, to-wit:

> But whether a particular transfer or obligation may be avoided, and under what circumstances, are matters upon which the trustee must look to the appropriate state or federal law as incorporated by section 544(b). Thus, the trustee's powers of avoidance under section 544(b) are not circumscribed by the time period, or other restrictions, to be found in sections 547 and 548.
>
> Section 544(b) presents a separate and distinct method of avoidance that is predicated upon the appropriate law, usually state, governing the transaction.
>
> But section 544(b) does not create in the trustee any independent right or power of action with which to challenge an allegedly invalid transfer. *Like Prometheus bound, the trustee is chained to the rights of creditors in the case under title 11. If there are not credi-*
> *tors within the terms of section 544(b) against whom the transfer is voidable under the applicable law, the trustee is powerless to act so far as section 544(b) is concerned.* [footnotes omitted] [emphasis added]

The trustee and/or the debtor in possession does not enjoy the status of a hypothetical judicial lien creditor until the date of the filing of the bankruptcy petition, and as such, that status is inapplicable to the challenged transaction that occurred well over a year prior to the commencement of this case. The trustee and/or debtor in possession cannot enjoy greater rights than that afforded by the Bankruptcy Code. See again the language of Miss.Code Ann. § 15–3–5 (1972).

Much of this discussion concerning the mechanical applicability of § 544(b) is purely academic. Even if this section were timely pled, the underlying result would not be changed since there has been no violation of applicable law to permit avoidance of the loan transaction between Coors of North Mississippi, Mr. and Mrs. Moak, and their lender, Planters Bank.

## VI.

ISSUE NO. 3. FRAUDULENT CONVEYANCE ALLEGATIONS REGARDING THE PAYMENT OF $350,000.00 BY COORS OF NORTH MISSISSIPPI.

On September 17, 1982, a date subsequent to the stock purchase transaction, Old South Coors issued a check payable to Charles Moak in the sum of $250,000.00. Moak endorsed the check and tendered it to Planters Bank to be applied to the Coors of North Mississippi indebtedness. Bank officials initially applied a portion of these proceeds to satisfy the $50,000.00 loan, negotiated by Moak on February 5, 1982, and the $40,000.00 loan, negotiated by Moak on April 20, 1982. However, after having been told by Moak that this application was in error, the bank applied the entire proceeds to the $615,094.63 indebtedness. On October 5, 1982, by wire transfer directly from the Bank of Longview, Planters Bank received a payment of $100,000.00, which was also applied to the $615,094.63 indebt-

edness. Both of these payments, totaling $350,000.00, were made from the proceeds of a loan negotiated by the purchasing group in the name of Coors of North Mississippi at the Bank of Longview, which was guaranteed by the individual purchasers.

The Plaintiff, Coors of North Mississippi, complains that these two payments, which occurred within one year prior to the filing of the bankruptcy case, were made to Moak with the intent to hinder, delay or defraud, etc., in violation of § 548(a), the provisions of which have been cited hereinabove.

■ § 548(a) provides two independent mechanisms to avoid fraudulent transfers or obligations. The first requires a showing that the transfer was made or the obligation was incurred with actual intent to hinder, delay, or defraud an existing or potential creditor of the debtor. The second requires a showing that the debtor received less than a reasonably equivalent value in exchange for the transfer or obligation while: (1) the debtor was insolvent or became insolvent as a result of the transfer or obligation; or (2) was left with an unreasonably small capital; or (3) intended to incur debts that could not be paid as they matured.

This Court has already found that the $615,094.63 indebtedness was legitimately incurred for a fair consideration by Coors of North Mississippi, as well as, that the amount of this indebtedness should not be considered as a contribution to capital by Moak. Everyone knew that this was an obligation owed by Coors of North Mississippi to Planters Bank. This debt did not become the exclusive obligation of the purchasers, Brewer, Allen, Krei, and Thompson, at the time of the stock purchase transaction; it was always an obligation of Coors of North Mississippi. When these purchasers acquired Moak's stock, they did so subject to the understanding that Coors of North Mississippi would remain liable on several obligations, just one of which was the debt owed to Planters Bank.

■ The Plaintiff implies that these two payments were made to Moak. This is simply not true. Both of these payments were credited, dollar for dollar, against the Coors of North Mississippi indebtedness to Planters Bank. The fact that one of these payments went to Moak first, and then to the bank, is immaterial. This was an obligation that had to be paid if Coors of North Mississippi was to remain operational. The Court, therefore, finds that there has been no showing whatsoever of an actual intent to hinder, delay, or defraud when these payments were made on a legitimate business obligation. Likewise, reasonably equivalent value was received in that Coors of North Mississippi was given full credit on the $615,094.63 indebtedness in the exact amounts of the payments made. It should be remembered that Planters Bank held a lien on all inventory, accounts, machinery, equipment, etc., owned by Coors of North Mississippi and, consequently, had these payments not been made, the enforcement of this lien would have effectively terminated all Coors of North Mississippi business activities.

■ The manner and timeliness of these two payments were orchestrated by the purchasers, not Moak. As such, the fact that Moak was a co-obligor under the promissory note with Coors of North Mississippi has no bearing in this case as to whether the payments were fraudulent transfers.

The Court is of the opinion that the payments totaling $350,000.00 to Planters Bank were not fraudulent transfers in violation of § 548(a). Consequently, that part of the Coors of North Mississippi complaint should be dismissed.

## VII.

ISSUE NO. 4. FRAUDULENT CONVEYANCE ALLEGATIONS CONCERNING THE PAYMENTS MADE TO CHARLES MOAK ON THE INSTALLMENT PROMISSORY NOTE EVIDENCING THE BALANCE OF THE PURCHASE PRICE FOR THE REAL PROPERTY CONVEYED BY MOAK BOTTLING TO THE PURCHASERS.

■ As set forth in the statement of facts, Moak and/or Moak Bottling con-

veyed approximately .636 acres, more or less, to the purchasers for the total sum of $275,000.00. $50,000.00 was considered as a down payment, and the balance of $225,-000.00, bearing interest at the rate of fifteen percent (15%) per annum, was to be paid in eighty-four (84) monthly installments of principal and interest in the sum of $4,341.78, commencing July 1, 1982. Moak received four actual payments on this obligation, as set forth immediately hereinbelow, from both Coors of North Mississippi and Old South Coors, all of which were applied to the Coors of North Mississippi indebtedness to Planters Bank, to-wit:

|      | DATE     | AMOUNT    | MAKER                                        | EXHIBIT NO.        |
|------|----------|-----------|----------------------------------------------|--------------------|
| (1)  | 08/17/82 | $4,341.78 | Ben Brewer                                   | Plaintiff's Ex. 16 |
| (2)(a) | 10/12/82 | 4,341.78 | Coors of North Mississippi                   | Plaintiff's Ex. 19 |
| (2)(b) | 10/13/82 | 5,841.78 | Cashier's Check Peoples Bank of Indianolo    | Plaintiff's Ex. 16 |
| (3)  | 11/08/82 | 4,341.78  | Coors of North Mississippi                   | Plaintiff's Ex. 21 |
| (4)  | 01/04/83 | 4,341.78  | Old South Coors                              | Plaintiff's Ex. 22 |

Moak testified that the check in the sum of $4,341.78, dated October 12, 1982, was exchanged at People's Bank of Indianola for the cashier's check in the sum of $5,841.78, dated October 13, 1982. The difference in the check amounts of $1,500.00, was in payment of gasoline purchases by Coors of North Mississippi at Moak Bottling. This testimony was uncontradicted; so, in effect, there was only one payment to Moak in the sum of $4,341.78 on the dates of October 12, 1982, and October 13, 1982, rather than two separate payments. The cashier's check was in pertinent part a duplication of the Coors of North Mississippi check issued one day earlier.

■■■ All of the aforementioned payments were made within one year of the filing of the Coors of North Mississippi and the Old South Coors bankruptcy cases. From the testimony, it appears undisputed that only four payments were made to Moak, and that the proceeds of each of these payments were applied by Moak to the $615,094.63 indebtedness at Planters Bank. Although the purchase price for the .636 acres, in the sum of $275,000.00, may appear exorbitant, it does not necessarily follow that the transaction, itself, including the obligation to repay the balance of the purchase price through the issuance of the $225,000.00 installment promissory note, is fraudulent. To avoid confusion, there should be a distinction drawn between the transaction as a whole, and the underlying four payments that were made to Moak. The payments are the subject matter of this issue, not the purchase of the real property, which for the most part was aborted. The trustee, or in this case, the debtor in possession, has the burden of proving that the conveyance and resulting obligation were fraudulent, and has not done so. *See* 4 *Colliers on Bankruptcy*, § 548 at 548–118 (15th Ed.1986). Insofar as § 548(a)(1) is concerned, particularly as to the complaint filed by Coors of North Mississippi, there has been no proof by clear and convincing evidence of an actual intent to hinder, delay, or defraud any creditors of Coors of North Mississippi.

■■■ Coors of North Mississippi centers its argument around the proposition that the payment of a debt, owed by a third party, i.e., the purchasers, is patently not made for reasonably equivalent value. In support of this proposition, Coors of North Mississippi cites the cases of: *In Re O'Bannon*, 484 F.2d 864, 867 (10th Cir. 1973); *In Re SLF News Distributors, Inc.*, 649 F.2d 613, 615 (8th Cir.1981); and *Klein v. Tabatchnick*, 418 F.Supp. 1368, 1372

(S.D.N.Y.1976). Counsel for Coors of North Mississippi failed to observe that the *Klein* case was *reversed* on this identical issue by the Second Circuit Court of Appeals. *See Klein v. Tabatchnick,* 610 F.2d 1043, 1047 (2nd Cir.1979). The exception to the proposition advanced by Coors of North Mississippi is that if the payer received some benefit by the payment of a debt owed by a third party, then the payment can still be for reasonably equivalent value. *See Matter of Evans Potato Co., Inc.,* 44 B.R. 191, 193–94 (Bankr.S.D.Oh.1984), and *In Re Jamison,* 21 B.R. 380, 381–82 (Bankr.D.Ct.1982). Since Moak applied each of these payments to the Coors of North Mississippi indebtedness at Planters Bank, the benefit to Coors of North Mississippi is obvious—for each dollar paid, it received a dollar reduction in the amount that it owed.

Even if the money paid to Moak had not been utilized to reduce the Coors of North Mississippi debt at Planters Bank, an argument could be made that Coors of North Mississippi still received the benefit of the use of this land. The area comprising the property conveyed in fee is obviously larger than the easement granted pursuant to the memorandum agreement. This property could certainly be considered as being worth at least the total amount that was paid to Moak, i.e., $17,367.12. This amount would be reduced to $8,683.56 if only the payments made by Coors of North Mississippi were considered. As noted earlier, the debtor in possession has the burden of proving that a transfer or obligation is fraudulent, but no proof whatsoever was presented concerning the value of this property. Regardless, the Court finds that because of the debt reduction, Coors of North Mississippi received reasonably equivalent value for the payments that it made, and as such, that part of its complaint, alleging a violation of § 548(a)(2), is also not well taken and will be dismissed.

As to whether Old South Coors received any reasonably equivalent value for the one payment that it made on January 4, 1983, is strictly a matter of speculation. As to this payment, there was no showing of an actual intent to hinder, delay, or defraud as required by § 548(a)(1). The Court cannot recall any testimony that this payment was made when Old South Coors was insolvent or that the payment rendered it insolvent. There was no evidence that the payment caused Old South Coors to be left with an unreasonably small capital, or that Old South Coors intended to incur debts that would be beyond its ability to pay as such debts matured. Due to the lack of proof concerning these statutory requirements, the Court is unable to form a conclusion that § 548(a)(2)(A) *and* (B) were violated. As such, that part of the complaint, alleging that the payment made by Old South Coors to Moak in the sum of $4,341.78 was a fraudulent transfer, is not well taken and will be dismissed.

## VIII.

ISSUE NO. 5. PREFERENTIAL TRANSFER ALLEGATIONS REGARDING THE $250,000.00 PAYMENT MADE ON SEPTEMBER 17, 1982, AND THE $100,000.00 PAYMENT MADE ON OCTOBER 5, 1982.

Since this bankruptcy case was filed on January 18, 1983, both of these payments, in the total sum of $350,000.00, fall outside the ninety (90) day preference period, set forth in § 547(b)(4)(A). If the recipient of the payments is an insider, as that term is defined under former § 101(25), currently codified under § 101(28), the preference period is extended to one year before the date of the filing of the bankruptcy petition, all as set forth in § 547(b)(4)(B). § 547(b) is set forth in its entirety as follows, to-wit:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(Since this case was filed prior to the effective date of the Bankruptcy Amendments and Federal Judgeship Act of 1984, the text of § 547(b), set forth hereinabove, is that in effect at the time that this bankruptcy case was filed, rather than as it now exists, subsequent to being amended, effective October 8, 1984.)

▆▆▆▆ The $250,000.00 was initially tendered through an Old South Coors check to Moak, who then endorsed the check and delivered it to Planters Bank, where it was ultimately applied to the $615,094.63 indebtedness. The subsequent $100,000.00 payment was a direct wire transfer from the Bank of Longview to Planters Bank, and was not handled by Moak at all. As stated earlier on more than one occasion, the Court is of the opinion that the aforementioned debt owed to Planters Bank was a legitimate corporate obligation of Coors of North Mississippi. As such, the Court is further of the opinion that the payments made in the total sum of $350,000.00 were not to Moak as an individual creditor of Coors of North Mississippi, but rather, were payments knowingly made on the corporate debt of Coors of North Mississippi. Since the two payments fall outside the ninety (90) day preference period, they

clearly are not preferences unless Moak was an insider. To fully resolve this issue, the Court will address the insider question raised by the Plaintiff. As applied to a corporation, the definition of an insider was codified under former § 101(25)(B), (now § 101(28)(B)), which reads as follows:

(25) "insider" includes—

. . . .

(B) if the debtor is a corporation—

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(iv) partnership in which the debtor is a general partner;

(v) general partner of the debtor; or

(vi) relative of a general partner, director, officer, or person in control of the debtor;

The aforementioned list is not considered all inclusive. *See Matter of Montanino*, 15 B.R. 307, (Bankr.D.N.J.1981) (holding that "the true test of an 'insider' is one who has such a relationship with the debtor that their dealings with one another cannot be characterized as an arms-length transaction"). At the time that the two payments in the sum of $350,000.00 were made, as well as, during the time that the two $4,341.78 payments were made under the installment promissory note, which also fell outside the ninety (90) day preference period, Moak was not an officer or director of Coors of North Mississippi, he owned no stock in the corporation, and generally possessed no information other than what was public knowledge. The proof revealed that Moak did maintain a Coors of North Mississippi bank account to "wind up" certain obligations which he assumed by virtue of the memorandum agreement. This certainly does not mean that he enjoyed a privileged relationship with the purchasers of his corporate stock, who set up a separate banking account at a different bank to handle their financial affairs.

Moak did provide certain alternative routing advice to the purchasers, but considering the overall scope of the beer distributorship operation, this advice, for which Moak received no compensation,

would not elevate him to the status of an insider.

The testimony revealed that Moak's son, Robert Moak, was retained as an employee at Coors of North Mississippi as a part of the stock purchase transaction. In addition to working as a truck driver, Robert Moak apparently assisted the other drivers in developing their truck routes. There was no testimony to the effect that Robert Moak was privy to any financial information applicable to Coors of North Mississippi, nor that he communicated any such information to his father. Therefore, this Court is of the opinion that Charles Moak was not an insider to Coors of North Mississippi at any time subsequent to April 26, 1982, the date he conveyed his stock to the purchasers and resigned as an officer and director of the corporation.

No one contends that Planters Bank, the actual recipient of the two payments totaling $350,000.00, was an insider to Coors of North Mississippi. Therefore, these payments cannot be considered as preferential transfers to Planters Bank, because of § 547(b)(4)(A).

§ 547(b) also states that the transfer must be to or for the benefit of a creditor if it is to be set aside as preferential. As acknowledged by everyone, Moak was not a creditor of either Coors of North Mississippi or Old South Coors. The creditor was and is Planters Bank. This is just one more reason that § 547(b) is inapplicable to the two payments totaling $350,000.00. Therefore, that part of the complaint, attempting to set these two payments aside as preferential transfers, is not well taken and will be dismissed.

### IX.

ISSUE NO. 6. PREFERENTIAL TRANSFER ALLEGATIONS REGARDING PAYMENTS RECEIVED BY MOAK, OUTSIDE THE NINETY (90) DAY PREFERENCE PERIOD, UNDER THE INSTALLMENT PROMISSORY NOTE, APPLICABLE TO THE REAL PROPERTY TRANSACTION.

As discussed above, Moak received two payments under the installment promissory note, applicable to the real property transaction, which fall outside the ninety (90) day preference period, set forth under § 547(b)(4)(A), to-wit: $4,341.78, received on August 17, 1982, and $4,341.78, received on October 12, 1982, or October 13, 1982. The Court has already found that the payments dated October 12, 1982, and October 13, 1982, represent only one payment to Moak and not two. This Court has also found that Moak was not an insider to Coors of North Mississippi subsequent to the date that he sold his corporate stock. As such, since the payments listed under this issue, all fall outside the ninety (90) day preference period, as well as, the fact that Moak is not a creditor of either Coors of North Mississippi or Old South Coors, these payments cannot be set aside and recovered to the bankruptcy estate as preferential transfers.

### X.

ISSUE NO. 7. PREFERENTIAL TRANSFER ALLEGATIONS REGARDING PAYMENTS RECEIVED BY MOAK, WITHIN THE NINETY (90) DAY PREFERENCE PERIOD, UNDER THE INSTALLMENT PROMISSORY NOTE, APPLICABLE TO THE REAL PROPERTY TRANSACTION.

As discussed earlier, Moak received two payments within the ninety (90) day preference period on the installment promissory note, applicable to the real property transaction, as follows, to-wit: $4,341.78, received on November 8, 1982, from Coors of North Mississippi; and $4,341.78, received on January 4, 1983, from Old South Coors. These payments are clearly within the ninety (90) day preference period, mentioned earlier; so whether or not Moak was an insider to either Coors of North Mississippi or Old South Coors is immaterial. The crux of this issue, however, is whether the payments made by Coors of North Mississippi and Old South Coors were made to a creditor as

required in § 547(b)(1). § 101(9) of the Bankruptcy Code defines a creditor as follows, to-wit:

　(9) "creditor" means—

　　(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

　　(B) entity that has a claim against the estate of a kind specified in section 502(f), 502(g), 502(h) or 502(i) of this title; or

　　(C) entity that has a community claim;

Both Coors of North Mississippi and Old South Coors have acknowledged that Moak was not a creditor of either. Because these two payments were made to a noncreditor, at first impression, it would appear that they should be set aside as fraudulent transfers. However, this has been explained earlier. Since there was no showing of an actual intent to hinder, delay, or defraud, in violation of § 548(a)(1), and since there was no showing that § 548(a)(2)(A) and (B) were violated, primarily because Coors of North Mississippi received reasonably equivalent value through the corresponding debt reduction at Planters Bank, the payments are not fraudulent within the meaning of the Bankruptcy Code. As to Old South Coors, there was no proof concerning the elements set forth in § 548(a)(2)(B)(i), (ii), or (iii), which must be established if there has first been a showing that no reasonably equivalent value was received in exchange for the payment. On the other hand, if Moak was not a creditor, then these payments cannot be considered as preferential transfers. Although the parties have apparently conceded the point, another definition which sheds light on the question of whether Moak was a creditor appears under § 101(4) which defines "claim" as follows, to-wit:

　(4) "claim" means—

　　(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

　　(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

Neither Coors of North Mississippi, nor Old South Coors, had any obligation to pay Moak as a result of the installment promissory note, applicable to the real property transaction. These payments were made by the debtor corporations because the purchasers, Brewer, Allen, Krei, or Thompson, elected to handle them in this manner. As the United States Supreme Court held in the often cited case of *Dean v. Davis*, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917), "[p]reference implies paying or securing a pre-existing debt of the person preferred." At 443, 37 S.Ct. at 131. This proposition has been upheld in the present bankruptcy context. *See Matter of Evans Potato Co., Inc.*, 44 B.R. 191, 193 (Bankr.S.D.Ohio. 1984); and *Klein v. Tabatchnick*, 610 F.2d 1043, 1049 (2nd Cir.1979).

The rule in *Dean v. Davis, supra*, under circumstances where a third person pays a creditor with funds that at one time belonged to the bankrupt debtor, is that "a transfer to a third person is invalid under this section [§ 60b] as a preference only where that person was acting on behalf of the creditor ..." 242 U.S. at 443, 37 S.Ct. at 131. There is absolutely no proof to the effect that Moak was acting on behalf of Planters Bank when he received the installment payments. He gratuitously applied these payments to the Coors of North Mississippi indebtedness. He had no obligation to do so, and as such, these payments, within the ninety (90) day preference period, were not made to a creditor of either Coors of North Mississippi or Old South Coors, nor for the benefit of a creditor. No relief has been sought against Planters Bank by either of the Plaintiffs in regard to this issue.

Consequently, the Court finds that the part of the complaint seeking to recover the payments made to Moak, within the ninety (90) day preference period, as a result of the installment promissory note, applicable to the real property transaction, is not well taken and will be dismissed.

## XI.

ISSUE NO. 8. MOTION TO REQUIRE PLANTERS BANK TO MARSHAL ASSETS.

The doctrine of marshaling assets is rooted in the case of *Culpepper v. Aston*, 2 Ch.Cas. 115, 117 (1682). *In Re Computer Room, Inc.*, 24 B.R. 732, 735 (Bankr.N.D. Al.1982). The doctrine generally is defined as follows:

> [w]here two or more creditors seek satisfaction out of the assets of their debtor, and one of them can resort to two funds whereas another creditor has recourse to only one of the funds—for example where a senior or prior mortgagee has a lien on two parcels of land, and a junior mortgagee has a lien on but one of the parcels—the former may be required to seek satisfaction out of the fund which the latter creditor cannot touch, so that by this means of distribution both creditors may be paid, or the single fund creditor may, if possible, have his claim satisfied out of the fund which is subject to the claims of both creditors. [footnotes omitted]

53 Am.Jur.2d *Marshaling Assets* § 1 (1970). *Accord, Sowell v. Federal Reserve Bank of Dallas, Tx.*, 294 F. 798, 801 (5th Cir.1923), *aff'd. with opinion*, 268 U.S. 449, 45 S.Ct. 528, 69 L.Ed. 1041 (1925); *Dilworth v. Federal Reserve Bank of St. Louis, Mo.*, 170 Miss. 373, 154 So. 535, 540 (1934); *First American National Bank of Iuka v. Alcorn, Inc.*, 361 So.2d 481, 492 (Ms.1978).

■ The elements required for marshaling are: 1) two persons that are creditors of a common or the same debtor; 2) that common debtor owns or is in control of at least two funds; and 3) one creditor has the right to resort to at least two of the

funds while the other creditor has the right to resort to only one of the funds. *In Re Computer Room, Inc.*, 24 B.R. at 734; 53 Am.Jur.2d *Marshaling Assets* § 7 (1970). An additional element is that both funds must be within the jurisdiction and control of the court. *Lewis v. U.S.*, 2 Otto 618, 620–23, 92 U.S. 618, 620–23, 23 L.Ed. 513, 514 (1876).

■ It has been held that the doctrine of marshaling assets is bottomed in the law of equity and not the law of contracts or liens, its purpose being "to promote fair dealing and justice" in such a way as "to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security." *Meyer v. U.S.*, 375 U.S. 233, 237, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963). The right to enforce the doctrine is governed by the principles of equity and rests within the sound discretion of the court. Thus, the doctrine cannot be invoked inequitably or when it will amount to an injustice to any party. *Dilworth*, 154 So. at 540; *accord*, 53 Am.Jur.2d *Marshaling Assets*, § 9 (1970).

■ In relation to the enforcement of the doctrine, it may be enforced by: 1) the issuance of an injunction against the senior creditor or the creditor with access to two funds; or 2) subrogating the senior creditor's claim to that of the junior creditors. *Farmers and Merchants Bank v. Gibson*, 7 B.R. 437, 439 (Bankr.N.D.Fl.1980), *citing*, Whitney, *The Law of Modern Commercial Practices* (2d Ed.1965).

Application of the doctrine of marshaling is not without exception. Often, jurisdictions differ on when and where an exception will be engrafted. Of particular importance in the instant case are the exceptions to the "common debtor" rule, i.e., there must be a common debtor with control or ownership of two or more funds. Without a common debtor, there cannot be a marshaling of assets. 53 Am.Jur.2d *Marshaling Assets* § 9. In the instant case, in order to have a "common debtor", the Plaintiffs must establish that Moak, or

more particularly, Mrs. Moak, should be considered as one and the same as Coors of North Mississippi. This can be accomplished only if Mr. or Mrs. Moak fall within one of the exceptions to the "common debtor" rule.

Exceptions to the "common debtor" rule have been developed when mandated by equity. *DuPage Lumber & Home Improvement Center Co., Inc. v. Georgia-Pacific Corp.*, 34 B.R. 737, 740 (N.D.Il.1983). One exception is where a shareholder has treated the corporation as an "alter ego", thus giving reason for the court to pierce the corporate veil to hold the stockholder liable for a corporate debt. Another exception occurs where a stockholder holds property or a claim against the corporation that equitably should be deemed a contribution to the capital of the corporation. *Gibson*, at 440. Yet another instance occurs where the stockholder has engaged in some inequitable conduct. *In Re United Medical Research, Inc.*, 12 B.R. 941, 943 (Bankr.C. D.Ca.1981).

 As to the exception that involves piercing the corporate veil, the traditional tests concerning self-dealing, or the treatment of the corporation as an "alter ego" of the principle stockholder, are required. In the opinion of this Court, the proof presented at trial was totally insufficient to establish that Moak, and certainly not Mrs. Moak, were engaged in self-dealing, or that Coors of North Mississippi was an "alter ego" of either.

 More closely related to the instant case is the question of whether Mrs. Moak's land in Tallahatchie County, Mississippi, should be regarded as a contribution to the capital of Coors of North Mississippi. The contribution to capital exception finds its roots in two Wisconsin cases: *Moser Paper Co. v. North Shore Publishing Co.*, 83 Wis.2d 852, 266 N.W.2d 411 (1978), and *C. Gotzian & Co. v. Shakman*, 89 Wis. 52, 61 N.W. 304 (1894). These cases have been applied in the bankruptcy context in *Gibson* and *In Re Multiple Services Industries, Inc.*, 18 B.R. 635 (Bankr.E.D.Wis. 1982). All four of these cases have been

firmly criticized by *In Re Computer Room, Inc.* at 735.

The *Gibson* case upheld a request for marshaling the assets of a shareholder to provide the trustee in bankruptcy with funds for the benefit of other creditors. The Court reasoned that if the property pledged by the shareholder to secure a corporate debt was viewed as a contribution to capital, then the "common debtor rule", i.e., the corporation and the shareholder were one, was satisfied. At 441. This minority view has been either criticized or found unacceptable in *Medical Research, Inc., In Re Computer Room, Inc.*, and *DuPage*.

In *DuPage* the court addressed the issue of creditor deception regarding the amount of working capital. The Bankruptcy Court in that case held that marshaling did not apply because the creditor requesting marshaling *was aware of* the various loans to the debtor corporation, as well as, the nature of the collateral securing those loans. At 742.

On the issue of whether a shareholder's property, pledged to secure a corporate debt, should be regarded as a contribution to capital, two Fifth Circuit cases provide insight.

*Arnold v. Phillips*, 117 F.2d 497 (5th Cir.), *cert. denied*, 313 U.S. 583, 61 S.Ct. 1102, 85 L.Ed. 1539 (1941), was a bankruptcy case that contained many of the same factual situations existing in the case now before the Court. The Court in *Arnold* was confronted with the question of whether advances made to set up the corporation by the corporate president and principal stockholder (the same person), secured eventually by a deed of trust on the entire plant property, were in reality contributions to capital. The court held that the amount of money advanced at the time of the corporation's inception was known to be totally inadequate, and that the deed of trust was executed and recorded to protect the shareholder—corporate president from other creditors, rather than to protect the corporation. The *Arnold* decision resem-

bles the instant case, but it must be interpreted in keeping with a subsequent Fifth Circuit decision, addressing the same question.

*Rowan v. U.S.*, 219 F.2d 51 (5th Cir.1955) was a tax refund case, dealing with the question of whether advances made to a corporation by the stockholders were, in actuality, contributions to capital. The controlling language in *Rowan* reads as follows:

> we nevertheless have seen no authority for the proposition that the stockholders of a corporation may not determine just how much of their funds they care to risk in the form of capital and how much, if any, they are willing to lend as credit. If they make such a determination and it is clear that such is their intent, the fact that when they close up the venture and take their loss as to such amount as they have actually loaned the corporation, this leaves them in a position to enjoy more favorable deduction privileges than if they had put it all in as capital, this does not entitle the Commissioner of Internal Revenue to rewrite their balance sheet for them and show to be capital what was intended to be a loan.

> But it is said that whether an advance is a loan or is capital depends on the intent of the parties, and this intent is to be ascertained from all relevant facts and circumstances.

*Id.* at 54.

Further, *Rowan* interprets *Arnold* to merely stand for "the proposition that the acts of the parties can be given maximum consideration in ascertaining their true intent." *Id.* The *Rowan* case was also cited as authority in *Medical Research, Inc.*, a bankruptcy case, where the court held that marshaling was not appropriate and that loans guaranteed by shareholders would not be held as contributions to capital. *Medical Research, Inc.*, at 943–44. The rationale in *Medical Research, Inc.*, for not holding that the stockholder guarantees were contributions to capital is based on language appearing in the *Rowan* case which reads as follows:

> [n]o stockholder could safely advance money to strengthen the faltering steps of his corporation (which, of course, may be greatly to the benefit of other creditors) if he is faced with the danger of having the Commissioner, with the backing of the courts, say 'he has no right to launch a corporate business without investing in it all the money it needed, and investing it in the way that is most disadvantageous to himself, both as relates to taxation and as to other creditors.'

*Medical Research, Inc.*, at 943–44.

In the area of contributions to capital, mention should be made of the cases, *Matter of Multiponics*, 622 F.2d 709 (5th Cir. 1980) and *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). The *Multiponics* case dealt primarily with an equitable subordination issue. However, the case also mentioned the question of whether shareholders' loans should be treated as capital contributions. In commenting on this matter, the court did little more than make reference to the *Pepper* decision, which dealt with what is today known as the "deep rock" doctrine. This doctrine holds that shareholders' loans to a debtor corporation are to be treated as contributions to capital where the corporation in under-capitalized. *Multiponics*, at 717.

Both the *Multiponics* case and the *Pepper* case are distinguishable by their respective factual circumstances from the case now before this Court. In *Multiponics*, the individual involved authorized and participated in repeated violations of a debenture agreement, as well as, in transactions that were considered "non-arm's length". There was no evidence of this type conduct that could be attributed to Mr. or Mrs. Moak. The *Pepper* case involved shareholders' loans to a corporation, made while the corporation was severely undercapitalized. Again, in the instant case, there are no shareholders' loans to the corporation, only the pledging of real estate as collateral by an individual who was never a shareholder of Coors of North Mississippi.

Succinctly stated, there is no equitable basis to conclude that the real property owned by Mrs. Moak should be considered as a contribution to the capital of Coors of North Mississippi. This is in keeping with the earlier decision of the Court to the effect that the line of credit obligations incurred by Moak and subsequently converted into the $615,094.63 indebtedness on September 2, 1981, should likewise not be considered a contribution to capital. It should be remembered that Moak borrowed the sum of $90,000.00, which was infused into Coors of North Mississippi, and for which, he remains liable. This is no doubt Moak's contribution to capital, and under the circumstances, this Court feels that it is sufficient.

In view of the fact that the Court has found that the pledging of the real property as collateral by Mrs. Moak should not be considered as a contribution to capital, and absent any self-dealing, fraud, or inequitable conduct on the part of either Mr. or Mrs. Moak, there is no common debtor, owning at least two funds existing in this case. In order for there to be a common debtor owning two funds, Mrs. Moak would have to be placed in the identical position of Coors of North Mississippi insofar as being liable to its unsecured creditors. Equity, which is the very foundation of the doctrine of marshaling, will not permit such an egregious result.

The most glaring problem, however, in the Plaintiff's efforts to marshal assets is the fact that Mrs. Moak has not been made a party to this litigation. The Plaintiff complained that its rights to due process were violated when it was excluded from a telephone conference at one point in this case, even after it had been afforded an opportunity to be fully heard in open court. Yet now, the Plaintiff would have this Court direct that Planters Bank satisfy its claim against property owned exclusively by Mrs. Moak without even the benefit of the service of a summons. This would amount to an absolute denial of due process of law. Mrs. Moak is in no way indebted to Coors of North Mississippi, no judgment has ever been rendered against her, and no claim has ever been made against her by Coors of North Mississippi.

For the above reasoning, standing alone, the Court feels that the doctrine of marshaling is inapplicable to this case. However, further comment is necessary to completely address this issue. As mentioned hereinabove, for marshaling to apply, there must be a common debtor owning at least two funds. Although this Court has not equated Mrs. Moak to be a common debtor, standing in the shoes of Coors of North Mississippi, the two funds in this case *would have been* the following:

1. The real property, located in Tallahatchie County, Mississippi, owned by Mrs. Moak, a co-maker, not an individual guarantor, with her husband and Coors of North Mississippi on the indebtedness owed to Planters Bank.

2. The proceeds of the Coors of North Mississippi equipment sale, formerly held in an escrow account at Planters Bank. This equipment, along with other personal property, had been initially pledged as collateral for the Planters Bank loan, and then subsequently pledged as collateral for the Bank of Longview loan. These funds, realized from an agreed liquidation sale, were placed in escrow pending a judicial determination as to the priority of liens dispute between Planters Bank and Bank of Longview. Subsequently, the Bank of Longview conceded that its lien position was inferior to that of Planters Bank and, more or less, abandoned its interest, principally because the sales proceeds would not even begin to satisfy the balance of the Coors of North Mississippi indebtedness to Planters Bank. This is not to say that the lien in favor of the Bank of Longview was invalid, only that it was subordinate to that of Planters Bank. The proceeds from the sale of equipment would have gone either to Planters Bank or Bank of Longview because of the size of their claims. Under no circumstances would these funds have been available to the unsecured creditors of Coors of North Mis-

sissippi, the group that the Plaintiff contends that it is protecting.

Certainly, Planters Bank was the creditor that had access to at least both of the funds described hereinabove. However, the only creditor having access to the fund created from the equipment sale proceeds, other than Planters Bank, was Bank of Longview, not the unsecured creditors of either Coors of North Mississippi or Old South Coors.

■ Previously, all parties to these proceedings, including Coors of North Mississippi, requested this Court to approve a settlement agreement, a part of which included the release to Planters Bank of the escrow account containing the proceeds of the equipment sale. Thereafter, the attorney representing Coors of North Mississippi appealed the approval of the settlement agreement order, which had been entered by the United States District Court for the Northern District of Mississippi, since Congress had failed to extend the existence of the United States Bankruptcy Courts. The appeal was without supersedeas and no stay was in effect pending the appeal that would prevent the provisions of the approved settlement order from being implemented. Consequently, Planters Bank drew against the escrow account and applied the proceeds therein against the debt owed by Coors of North Mississippi. The escrow account has long since been closed, eliminating the existence of the second fund. *See Drake v. Collins*, 5 How. (6 Miss) 253 (1840), and *Baine v. Williams*, 10 Smedes & M (18 Miss) 113 (1848).

In *Baine*, a judgment creditor levied execution on real property. A creditor, holding a junior lien on the real property, filed suit seeking to compel the judgment creditor to marshal assets and levy execution on other property owned by the judgment debtor, accessible exclusively to the judgment creditor. The lower court declined to require marshaling and the property was sold under execution. The junior lien holder appealed the decision, without supersedeas, seeking to have the execution sale set aside. The appellate court held that al-

though the junior lien holder was entitled to the original relief requested, i.e., marshaling of assets, that since the property had already been sold, that the granting of relief *now* to the junior lien holder would be improper.

Coors of North Mississippi and its counsel did nothing to attempt to avoid liquidation of the escrow account. No request was made of the parties or of their counsel to continue to hold the account in escrow pending an appeal, and no motions were filed requesting supersedeas, or a stay pending appeal. In fact, counsel for Coors of North Mississippi executed the check releasing the escrow account proceeds to Planters Bank. (See Planters Bank Exhibit 4.)

In summary, the Court would state that the facts of the instant case do not give rise to an application of the marshaling doctrine in the conventional sense. There is no "common debtor" per se, and no exceptions to the "common debtor" rule that could be equitably extended to reach Mrs. Moak or the real property which she pledged as collateral to Planters Bank. Other than Planters Bank, the only creditor that would have had access to any of the funds, which would have been the subject matter of the marshaling motion, was Bank of Longview, not the unsecured creditors of either Coors of North Mississippi or Old South Coors. Finally, the second fund, i.e., the escrow account containing the equipment sale proceeds, has been completely disbursed and applied to the indebtedness owed by Coors of North Mississippi at Planters Bank. To invoke the doctrine of marshaling, an extremely potent equitable remedy, all of the requisite elements must be established. This has not been done in this case; so consequently, the motion for marshaling must be overruled.

An Order will be entered consistent with this Opinion.